COMMONWEALTH *vs.* MICHAEL J. MORIARTY.

Middlesex.     February 2, 1942. — February 25, 1942.

Present: FIELD, C.J., QUA, COX, & RONAN, JJ.

*Holiday. Tavern. Alcoholic Liquors,* Sale, Tavern. *Lord's Day. Sale,* What constitutes, Alcoholic Liquors. *Words,* "Shop," "Retail stores," "Merchandise."

A tavern, as defined in § 1 of G. L. (Ter. Ed.) c. 138 in the amended form appearing in St. 1935, c. 253, § 1, is both a shop within G. L. (Ter. Ed.) c. 136, § 5, and a retail store within the provisions of so much of G. L. (Ter. Ed.) c. 4, § 7, appearing in St. 1938, c. 245, as relates to October 12; and a conviction for keeping a tavern open on that day between the hours specified in said amended § 7 was proper.

COMPLAINT, received and sworn to in the Third District Court of Eastern Middlesex on October 17, 1940.

On appeal to the Superior Court, the case was heard by *Williams*, J.

*C. R. Goldstein*, for the defendant.

*R. F. Bradford*, District Attorney, for the Commonwealth, submitted a brief.

FIELD, C.J.   A complaint in a District Court charged that the defendant "on the twelfth day of October . . . [1940], that day being Columbus Day, did keep open his shop in . . . Cambridge, between the hours of seven o'clock ante meridian and one o'clock post meridian, for the purpose of doing retail business therein." The defendant was found guilty. Upon appeal to the Superior Court the case was heard by a judge, sitting without a jury, on an agreed statement of facts, and the defendant was found guilty and sentenced. With the consent of the defendant the case was reported to this court for the decision of questions of law arising therein. G. L. (Ter. Ed.) c. 278, § 30. See *Commonwealth* v. *O'Neil*, 233 Mass. 535, 543.

There was no error.

General Laws (Ter. Ed.) c. 136, § 5 — herein referred to as the Lord's day statute — provides that "Whoever on the Lord's day keeps open his shop, warehouse or workhouse, or does any manner of labor, business or work, except works of necessity and charity, shall be punished by a fine . . . ." And G. L. (Ter. Ed.) c. 4, § 7, as finally amended by St. 1938, c. 245, so far as here material — herein referred to as the Columbus day statute — provides that "all laws, statutes, orders, decrees, rules and regulations regulating the keeping open of retail stores on the Lord's day shall be applicable to the keeping open of retail stores on October twelfth between the hours of seven o'clock ante meridian and one o'clock post meridian."

Material facts appearing in the agreed statement of facts include the following: "The defendant, at the time of the complaint, was duly licensed by the licensing authori-

ties of the city of Cambridge as a tavern keeper within the meaning of G. L. (Ter. Ed.) c. 138, § 1, at 480 Cambridge Street, Cambridge, Massachusetts, where defendant conducted his business. The premises were outfitted with a bar and booths and seats for the convenience of his customers, who were served either at the bar or while seated in the booths. Service of alcoholic beverages to customers of the defendant were made to be drunk on the premises only, and were served either as a 'mixed drink,' i.e., mixed with other ingredients or 'straight,' i.e., without dilution but with some other nonalcoholic beverage as a 'chaser.' On Columbus Day, October 12, 1940, he was open to do business between the hours of eight o'clock ante meridian and one o'clock post meridian, as such tavern keeper, which are part of the usual hours for doing business by virtue of the defendant's license as a tavern keeper unless prohibited by the statute here drawn in issue . . . . At or about eight twenty ante meridian, Cambridge police officers entered the defendant's tavern and observed five men drinking at the bar and a sale being completed."

The facts agreed clearly warranted a finding that the defendant kept open his place of business, for the purpose of doing business therein, within the specified hours on Columbus day, 1940. See *Commonwealth* v. *Collins*, 2 Cush. 556; *Commonwealth* v. *Lynch*, 8 Gray, 384; *Commonwealth* v. *Dextra*, 143 Mass. 28, 31. The defendant contends, however, that his place of business was not a "retail store" within the meaning of G. L. (Ter. Ed.) c. 4, § 7, as amended. According to the agreed facts his place of business was a "tavern." He was duly licensed as a "tavern keeper" within the meaning of G. L. (Ter. Ed.) c. 138, § 1, as amended. See St. 1935, c. 253, § 1. "Tavern" is therein defined as "an establishment where alcoholic beverages may be sold, as authorized by this chapter, with or without food, to be served to and drunk by patrons in plain view of other patrons, all entrances to which shall open directly from a public way." Said c. 138 is entitled "Alcoholic Liquors." Section 12 thereof, as amended (see St. 1933, c. 376, § 2; St. 1934, c. 121, § 2; St. 1935, c. 253, §§ 2, 3, 4;

St. 1936, c. 207, § 2; St. 1937, cc. 264, 331), provides under the subtitle "Sale of alcoholic beverages or wines and malt beverages to be drunk on the premises," among other things, for the granting of a license to a "common victualler duly licensed . . . to conduct a restaurant, an innholder duly licensed . . . to conduct a hotel and a keeper of a tavern as defined by this chapter" "to sell to travelers, strangers and other patrons and customers not under twenty-one years of age, such beverages ['all alcoholic beverages or only wines and malt beverages, as the case may be'] to be served and drunk."

The charge in the complaint is keeping open a "shop" as that word is used in the Lord's day statute, G. L. (Ter. Ed.) c. 136, § 5 — a statute that, so far as the use of the word "shop" is concerned, has not been changed in substance in many years. See Rev. Sts. c. 50, § 1; Gen. Sts. c. 84, § 1; Pub. Sts. c. 98, § 2; St. 1895, c. 434, § 2; R. L. c. 98, § 2. In these earlier statutes, as now, the phrase "shop, warehouse or workhouse" was used. Doubtless the word "shop" may have different meanings when used with different contexts. But in *Boston Loan Co.* v. *Boston*, 137 Mass. 332, 336, where, however, the word "shop" was used in a different statute from the statute here involved, it was said: "'Shop,' in its popular as well as legal meaning, is not confined to a workshop. It is a word of various significance, and 'store' and 'workshop' are both included in it, and do not exhaust its meaning." And in *Commonwealth* v. *Riggs*, 14 Gray, 376, 378, where there was an indictment for larceny in a "building, called and being a shop," the court said that the building was "rightly denominated a shop," being a "place kept and used for the sale of goods." See also *Commonwealth* v. *Annis*, 15 Gray, 197, 199, 201. Moreover, in *Commonwealth* v. *Graham*, 176 Mass. 5, 6, under the Lord's day statute then in effect, a defendant was charged with keeping open her shop on the Lord's day, and there was evidence that she, a licensed victualler, kept a restaurant open as a dining room, supplied meals to a large number of persons and sold cigars to some of them. (The sale of tobacco on the Lord's day by common victual-

lers was not then permitted.)   The court assumed in favor of the defendant that a "room kept open by a common victualler merely as a dining room is not a shop" within the meaning of the statute, but said that if "one of her purposes in keeping the place open was the sale of cigars she was guilty of the offence charged."   Closer, however, to the present case are *Commonwealth* v. *Trickey*, 13 Allen, 559, and *Commonwealth* v. *Nagle*, 117 Mass. 142.   In the former of these cases a conviction was sustained, under the Lord's day statute then in effect, for keeping open a "shop" where the evidence showed that the defendant's place of business was kept open for the sale of liquor.   In the latter of these cases a conviction was sustained under that statute for keeping open a "shop," the court saying that, under the instructions given to the jury, they must have found "that the defendant kept a liquor shop and bar room open for ordinary traffic with the public indiscriminately on the Lord's day," and that this "was clearly a violation of the Gen. Sts. c. 84, § 1 [the Lord's day statute then in effect], upon which the indictment is based."   In the light of these cases it is clear upon the facts agreed that the defendant's tavern was a "shop" within the meaning of the Lord's day statute.   Indeed, the defendant apparently makes no contention to the contrary.

But the defendant contends that his tavern was not within the description of "retail stores" in the Columbus day statute.   Obviously the Columbus day statute is narrower in scope than the Lord's day statute, since the former statute incorporates the provisions of the latter statute only with respect to "retail stores."   The word "shop," as already pointed out, may include places of business that are not "retail stores" or even "stores."   Some doubt as to the meaning of the word "store" was suggested in *Commonwealth* v. *M'Monagle*, 1 Mass. 517.   But in *Commonwealth* v. *Whalen*, 131 Mass. 419, 421, where the defendant was charged with breaking and entering "a certain building, to wit . . . [a] store," and the evidence showed that in the building in question there were dining rooms in which meals were served but in one of them there was a bar, and

that lager beer and cigars were kept and sold, it was said that "a place in which merchandise was kept for sale" "is one of the common significations of the word 'store' in this country." See also *Commonwealth* v. *Annis*, 15 Gray, 197, 199, 201. And in *Boston Loan Co.* v. *Boston*, 137 Mass. 332, 335, it was said, with reference to the use of the word "store" in a tax statute, that the "word 'store,' as applied to a building and used in the statute, is intended to designate a place where traffic is carried on in goods, wares, or merchandise." We think that the word "stores" in the phrase "retail stores" in the Columbus day statute was used with this meaning. The Columbus day statute, however, is further limited to "retail stores." The word "retail" imports primarily that the sale or traffic in goods, wares or merchandise carried on in such "stores" shall be in small quantities. *Commonwealth* v. *Greenwood*, 205 Mass. 124, and cases cited. *Petros* v. *Superintendent of Buildings of Lynn*, 306 Mass. 368, 371.

On the facts agreed the defendant's tavern was not only a "shop" within the meaning of the Lord's day statute, but was also a "retail store" within the meaning of the Columbus day statute, as above interpreted, so that the provisions of the Lord's day statute, extended to Columbus day with respect to "retail stores," were applicable to the defendant's tavern. Alcoholic beverages, notwithstanding their nature and the statutory limitations upon the sale thereof, are "merchandise" within the meaning of that word as used in the cases interpreting the word "store." See *Commonwealth* v. *Whalen*, 131 Mass. 419; *New England & Savannah Steamship Co.* v. *Commonwealth*, 195 Mass. 385, 391; *Bruno* v. *United States*, 289 Fed. 649, 653. And the business carried on by the defendant at his tavern obviously was "retail" in its nature.

The defendant contends, however, that in serving patrons at his tavern he was not *selling* alcoholic beverages in such a sense as to constitute his tavern a "store" for the sale of or traffic in merchandise. He argues the analogy of a tavern to a restaurant, with respect to which it has been suggested that the restaurant keeper does not *sell* the food but that

"the charge made is not for the food alone, but includes the service rendered and the providing of a place in which to eat." This suggestion was made in *Friend* v. *Childs Dining Hall Co.* 231 Mass. 65, 70, 77–79, a case relied on by the defendant. The suggestion, however, was not the ground of the decision of the case, though the result of the case would have been the same if the suggestion had been followed. But it was said in that case, with respect to a transaction between a restaurant keeper and a patron of the restaurant, that there "is strong ground for holding that the contract made between one who keeps a restaurant and one who resorts there for food to be served and eaten on the premises is a sale of food," and, after citing decisions including *Commonwealth* v. *Worcester*, 126 Mass. 256, and *Commonwealth* v. *Warren*, 160 Mass. 533, that in "view of these decisions it would be difficult for this court to hold that the transaction arising from a contract to serve to a guest food to be eaten by him upon the premises of the keeper of an eating house, is not a sale." Pages 68–69. *Commonwealth* v. *Worcester*, 126 Mass. 256, 257, arose upon a complaint for keeping and maintaining a "dwelling-house . . . used for the illegal sale and illegal keeping of intoxicating liquors," and there was evidence that people resorted to the defendant's dwelling house and there were served with meals and as a part thereof intoxicating liquor was provided. The court said that, if "the meal included intoxicating liquors, the purchase of the meal would be a purchase of the liquors." The strong intimation in the *Friend* case that the transaction between a restaurant keeper and a patron of his restaurant constituted a "sale" has been established as the law by later decisions. Indeed, in *Smith* v. *Gerrish*, 256 Mass. 183, 186, it was said to have been settled in this Commonwealth by the *Friend* case that "the service of food for immediate consumption on the premises is a sale." And it was said in *Schuler* v. *Union News Co.* 295 Mass. 350, 353, with respect to such a transaction that "there is now no doubt, under our decisions, that the transaction amounted to a sale covered by the sales act, at least as to the food actually consumed." (This

case arose under the sales act, but the statement there made as to the nature of the transaction is not to be considered as limited to transactions within that act.) See also *Merrymount Co.* v. *Edwardes*, 263 Mass. 282, 284; *Liggett Drug Co. Inc.* v. *License Commissioners of North Adams*, 296 Mass. 41, 49, 51. The defendant, therefore, is not aided by any analogy of a tavern to a restaurant.

On the contrary, the decisions relating to the serving of food at a restaurant for immediate consumption support the conclusion that the serving of an alcoholic beverage at a tavern to be drunk on the premises constitutes a sale of such alcoholic beverage. And this conclusion is in accord with the language of the statute relating to alcoholic beverages. G. L. (Ter. Ed.) c. 138, as amended. A "keeper of a tavern," as the word "tavern" is defined in the statute, is licensed to "sell" such alcoholic beverages, according to the express language of the statute, to be "served and drunk," G. L. (Ter. Ed.) c. 138, § 12, as amended, under a subtitle of the statute, "Sale of alcoholic beverages . . . to be drunk on the premises." And a "tavern," as so defined, is "an establishment where alcoholic beverages may be sold." G. L. (Ter. Ed.) c. 138, § 1, as amended. Clearly the statute treats the transaction between a tavern keeper and a patron as a "sale." The fact that the alcoholic beverage is to be drunk on the premises does not preclude the transaction from being a "sale," any more than does the fact that food served at a restaurant is to be consumed on the premises prevent such a transaction from being a "sale." It is not the less a "sale" because a place is provided where the alcoholic beverage is to be drunk, nor because of the fact that the alcoholic beverage sold may be a "mixed drink," or, if "straight," may be served with a "chaser." In this respect the transaction is analogous to the service of food at a restaurant to be consumed on the premises. The accommodations provided and the service rendered are incidents of the "sale." See *Petros* v. *Superintendent of Buildings of Lynn*, 306 Mass. 368, 371–372. Obviously such a "sale" is at retail.

Doubtless not every "sale" of an alcoholic beverage at

retail would constitute the place at which such "sale" was made a "retail store." It may well be that there are places at which sales of alcoholic beverages at retail may be made legally which, by reason of other characteristics, are not "retail stores" within the meaning of these words as used in the Columbus day statute. We are not required in this case to determine generally the scope of the words. But there is nothing in the nature of a "tavern" as defined in G. L. (Ter. Ed.) c. 138, § 1, in its amended form, that excludes a "tavern" from the category of "retail stores." By definition a "tavern" is "an establishment where alcoholic beverages may be sold" under the authority of a license to the tavern keeper to "sell" such beverages to be served and drunk. The dominant purpose of a "tavern" is the selling of a kind of merchandise — alcoholic beverages — at retail. Such a place of business is a "shop" within the decisions of *Commonwealth* v. *Trickey*, 13 Allen, 559, and *Commonwealth* v. *Nagle*, 117 Mass. 142, and a "store" within the decision of *Commonwealth* v. *Whalen*, 131 Mass. 419, 421, in each of which cases a place where alcoholic beverages were sold was involved. We perceive no reason in the apparent purpose of the Columbus day statute for excluding a "tavern" from its application. Moreover, the governing statute, of course, is not modified by the regulations of the alcoholic beverages control commission referred to in the statement of agreed facts.

*Judgment affirmed.*