COMMONWEALTH vs. THE GREAT ATLANTIC &
PACIFIC TEA COMPANY, INC.

Barnstable.  November 8, 1988. — April 4, 1989.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Common Day of Rest. Statute*, Construction. *Due Process of Law*, Vagueness of statute.

The operator of a retail store which was permitted to open before noon on
    Sunday for the purpose of selling certain items enumerated in G. L.
    c. 136, § 6, was not, by reason of language in clause 50 of § 6, inserted
    by St. 1977, c. 722, entitled to sell during that time any items other
    than those enumerated. [477-481]
The provisions of G. L. c. 136, § 6 (50), were held not to be unconstitution-
    ally vague. [481-482]
Where provisions of G. L. c. 136, § 6, permitting certain retail sales of
    merchandise before noon on Sunday, were fairly subject to an interpre-
    tation which would make lawful the conduct of a retailer charged with
    violating the Sunday closing law, this court determined that its contrary
    construction of the legislative language would have only prospective
    effect. [482-483]

COMPLAINTS received and sworn to in the Orleans Division
of the District Court Department on July 25, 1985; August 15,
1985; and October 21, 1985, respectively.

On appeal to the jury session of the Barnstable Division the
cases were heard by *Richard P. Kelleher*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Evan T. Lawson (Howard J. Wayne & Eugene R. Richard*
with him) for the defendant.

*Thomas M. Yonce*, Assistant District Attorney, for the
Commonwealth.

O'CONNOR, J. The Great Atlantic & Pacific Tea Company,
Inc. (A & P), was found guilty on three complaints charging
it with unlawfully keeping open its Dennisport and Province-

town stores in violation of G. L. c. 136, § 5 (1986 ed.), the Sunday closing law.[1] It was fined $40 plus a $15 victim-witness fee on each complaint. The activity that formed the basis for the complaints was the sale of canned food items before noon on Sunday.

The defendant filed a motion to dismiss supported by a statement of agreed facts. According to this statement, a police officer entered the A & P store in Dennisport on Sunday, July 21, 1985, at 9:10 A.M., and bought canned corn and canned carrots. The same officer entered the same store the following Sunday morning, July 28, 1985, and bought canned pork and beans and canned soup. A State trooper entered the A & P store in Provincetown on August 18, 1985, a Sunday, at 8:40 A.M., and bought canned green beans and canned carrots. On each occasion, there were more than three employees working in the store.

General Laws c. 136, § 5, provides that "[w]hoever on Sunday keeps open his shop, warehouse, factory or other place of business, or sells foodstuffs, goods, wares, merchandise or real estate, or does any manner of labor, business or work, except works of necessity and charity" shall be punished by a fine. Both A & P stores were open for business on Sunday from 8 A.M. to 6 P.M. However, G. L. c. 136, § 6, enumerates various exceptions to the prohibition of Sunday openings and sales. During its operating hours, including Sunday mornings, A & P offered for sale a number of items included within § 6 exceptions. For example, A & P sold newspapers (7); fuel and lubricating oil (17); growing plants, trees and bushes and articles incidental to their cultivation, and cut flowers (20); food prepared under a common victualler's license for consumption off the premises (22); bakery products (24); tobacco products, soft drinks, confectionery, baby foods, fresh fruits and fresh vegetables, dairy products and eggs (25); ice (26); drugs, medicines, and personal health and sanitary supplies (27); greeting cards and photographic film (28); and State lottery tickets (47). The stores also offered for sale on Sunday morn-

---

[1] The complaints cited the store managers. By agreement, the named defendants were amended to A & P.

ings canned foods such as those bought by the complaining police officers, as well as pet supplies, toys, magazines, clothing, housewares, hardware, stationery, sunglasses, and picnic and beach supplies. None of these is specifically mentioned in G. L. c. 136, § 6. More than fifty per cent of A & P's total sales on Sunday mornings were attributable to items included within § 6 exemptions.

A & P argues that the first paragraph of § 6 (50) provides the basis for its lawful sale on Sunday mornings of canned foods and other items not specifically mentioned in § 6. That paragraph exempts from the § 5 prohibition against business on Sunday, "[t]he keeping open of a store or shop and the sale at retail of goods therein, but not including the retail sale of goods subject to chapter one hundred and thirty-eight, and the performance of labor, business, and work directly connected therewith on Sunday; provided, however, that this exemption shall not apply to any legal holiday as defined in this chapter; and provided, further, that any store or shop which qualifies for exemption under this clause but does not qualify for exemption under any other clause in this section shall not open for business on Sunday prior to the hour of noon." A & P argues that, because it "qualifies for exemption" when it sells newspapers, dairy products, soft drinks, and other items specifically mentioned as exemptions in various clauses of § 6, it may "open for business on Sunday prior to the hour of noon." By virtue of being lawfully "open for business," A & P argues, it may also sell other nonexempt items, such as canned foods, on Sunday before noon.

It is clear that A & P may lawfully open on Sunday morning to sell items that are made exempt by § 6. For example, A & P could open on Sunday morning to sell newspapers under clause 7, or to sell dairy products or soft drinks under clause 25. But A & P could open to sell such exempt items even without reference to the implication in the second proviso of clause 50 that a store which "qualifies for exemption" under some clause of § 6 other than clause 50 may "open for business on Sunday prior to the hour of noon." The various clauses in § 6 "do not qualify each other. Each must be read independently." *Ralph's*

*Mkt., Inc.* v. *Beverly*, 353 Mass. 588, 590 (1968). The language in the second proviso of clause 50 merely makes clear that that ban on Sunday morning business was not intended to restrict the rights that stores already had to open and make Sunday morning sales under one or more of the other exemption clauses.

Contrary to A & P's assertions, there is nothing in the language of clause 50 or in the history or logic of the Sunday closing law's statutory scheme that indicates any legislative intent that, if a store was "open for business" before noon by virtue of selling an exempt item, it would therefore be lawfully open to sell any goods at retail other than alcohol. The words "open for business" in clause 50 do not mean open for every kind of business. A & P admits that it could not lawfully be open to provide services or to manufacture goods. There is no reason to conclude that the Legislature intended clause 50 to allow a store exempted by another clause in § 6 to open for a business purpose not indicated in that other clause. Prior cases indicate that a store that is lawfully open for some kinds of business may nonetheless be prosecuted for being open for business in violation of the act. See *Commonwealth* v. *Graham*, 176 Mass. 5, 6 (1900) (although defendant may have been open lawfully to supply meals as a common victualler, "[i]f one of her purposes in keeping the place open was the sale of cigars she was guilty" of keeping open her shop for the purpose of doing business therein in violation of the Sunday closing law, St. 1895, c. 434, § 2). See also *Zayre Corp.* v. *Attorney Gen.*, 372 Mass. 423 (1977).

Chapter 722 of the Acts of 1977 added clause 50 to § 6. That amendment allowed stores to open for retail sales of all goods other than alcohol on Sundays between Thanksgiving and Christmas. Chapter 722 had no effect on Sunday sales during the rest of the year, which remained limited to sales of items or the operation of stores which were made exempt by one of the other forty-nine clauses in G. L. c. 136, § 6. Chapter 722 made no distinction between morning and afternoon sales.

Chapter 556 of the Acts of 1982 inserted the current language in G. L. c. 136, § 6.[2] This amendment extended the exemption for Sunday retail sales of goods other than alcohol from the Christmas season throughout the year. However, it also introduced for the first time a distinction between opening stores for business before noon and opening stores for business after noon. We must not presume this distinction to be without meaning.

A & P argues that the Legislature's intent in enacting and amending clause 50 was to respond to the decision in *Zayre Corp.* v. *Attorney Gen., supra.* In that case, we rejected a constitutional challenge to the Sunday closing law by retailers who sold both nonexempt and exempt items, and who found it uneconomical to open for business on Sundays solely to sell exempt items. The plaintiff in the *Zayre Corp.* case unsuccessfully argued that §§ 5 and 6 denied to its stores the equal protection of the laws because its competitors who sold predominantly exempt items or which fell within the § 6 (2) exemption for the sale of foodstuffs by stores with three or fewer employees were able to operate on Sunday with little constraint. *Id.* at 427. A & P argues that the Legislature enacted clause 50 after the *Zayre Corp.* decision in order to make it economical for retailers that sell both exempt and nonexempt items to open and compete on Sunday. Even if this hypothesis about the Legislature's intent is true, it is not inconsistent with reading clause 50 as opening the door for such stores to compete for retail sales of all goods on Sunday afternoons, while retaining the situation that existed prior to the amendment for Sunday mornings whereby a store that sells some exempt items may at its option open and compete for sales of those goods.

"A criminal statute, to be sure, is to be strictly construed, but it is 'not to be construed so strictly as to defeat the obvious intention of the legislature.'" *Barrett* v. *United States*, 423 U.S. 212, 218 (1976), citing *Huddleston* v. *United States*, 415 U.S. 814, 831 (1974). To adopt A & P's reading would make

---

[2] Clause 50 of § 6 was amended by St. 1988, c. 311, to include language, not relevant here, applicable to Christmas Days that fall on Sunday.

the restriction on Sunday morning openings virtually meaning-less, since a store would have to do no more than offer cigarettes (clause 25), newspapers (clause 7), or cough drops (clause 27) for sale in order to be allowed to sell any goods other than alcohol. We do not think that the Legislature intended such an illogical result. "An intention to enact a barren and ineffective provision is not lightly to be imputed to the Legislature." *Insurance Rating Bd.* v. *Commissioner of Ins.*, 356 Mass. 184, 189 (1969). See *O'Shea* v. *Holyoke*, 345 Mass. 175, 179 (1962). "Where, as here, '[t]he draftsmanship is faulty, . . . the duty devolves upon us to give . . . [the statute] a reasonable construction.' *Massachusetts Turnpike Auth.* v. *Commonwealth*, 347 Mass. 524, 528 (1964). In doing so, we should take care to construe the statute to carry out the legislative intent . . . ." (Citations omitted.) *Massachusetts Comm'n Against Discrimination* v. *Liberty Mut. Ins. Co.*, 371 Mass. 186, 190 (1976). Therefore, we come to the more reasonable conclusion that the Legislature, in extending the exemption for Sunday retail sales throughout the year, wanted to preserve the statute's historic and salutary purpose of fostering a uniform time of rest and relaxation on Sunday mornings, even though it was unwilling to effect the potential economic loss of restricting retail sales on Sunday afternoons. See *Zayre Corp.* v. *Attorney Gen., supra* at 434, 437.

A & P argues in the alternative that the second proviso in the first paragraph of clause 50 is unconstitutionally vague in violation of the due process clause of the Fourteenth Amendment to the United States Constitution. " 'A law is unconstitutionally vague if it is not sufficiently explicit to give clear warning as to proscribed activities.' *Commonwealth* v. *Orlando*, 371 Mass. 732, 734 (1977). '[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' *Connally* v. *General Constr. Co.*, 269 U.S. 385, 391 (1926)." *Commonwealth* v. *Gallant*, 373 Mass. 577, 579-580 (1977). See *Commonwealth* v. *Williams*, 395 Mass. 302, 304 (1985); *Commonwealth* v. *Adams*, 389 Mass.

265, 270 (1983); *Opinions of the Justices*, 378 Mass. 822, 826-827 (1979). But the fact that the Legislature might "have chosen '[c]learer and more precise language' equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague" (citation omitted). *United States* v. *Powell*, 423 U.S. 87, 94 (1975).

There is no question that the Legislature might have chosen more precise language and less convoluted syntax to achieve its intent in clause 50. But that does not require us to declare that provision void. "[I]f a statute can be made constitutionally definite by a reasonable construction, the court is under a duty to give it that construction." *Thomes* v. *Commonwealth*, 355 Mass. 203, 207 (1969). Our determination that the Legislature intended in clause 50 to allow stores to "open for business" on Sunday mornings only to sell those items made exempt by some other clause of § 6, satisfies our duty and makes clause 50 constitutionally definite.

Still, we will not hesitate to reverse as fundamentally unfair a conviction under a statute that is fairly subject to an interpretation that would make the defendant's conduct lawful, even though we clarify the statute by adopting a different interpretation that better reflects the Legislature's intent. In that case, our interpretation of the statute will apply prospectively only. See *Commonwealth* v. *Chretien*, 383 Mass. 123, 132 (1981); *Commonwealth* v. *Sefranka*, 382 Mass. 108, 118 (1980). See also *Balthazar* v. *Superior Court of Mass.*, 428 F. Supp. 425, 434 (D. Mass. 1977) (setting aside on habeas corpus grounds *Commonwealth* v. *Balthazar*, 366 Mass. 298 [1974]), aff'd, 573 F.2d 698 (1st Cir. 1978). We agree that the syntax of clause 50 makes its interpretation difficult. Although we do not believe it is the correct one, A & P's reading of clause 50 is plausible by reading the statute literally.[3] Because A & P acted without benefit of a judicial interpretation of clause 50,

---

[3] The Commonwealth concedes that A & P's interpretation "seems reasonable on a literal reading of the disputed phrase."

A & P was not adequately warned that its conduct violated the law. Accordingly, we reverse A & P's convictions and remand for findings of not guilty. However, for the future, the statute is to be construed in accordance with this opinion. So construed, the statute complies with constitutional standards.

*So ordered.*