NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-341                                          Appeals Court

 DANIEL CHAPOTEAU[1] & another[2] vs.  BELLA SANTE, INC., & others.[3]

No. 22-P-341.

Suffolk.     December 9, 2022. - September 8, 2023.

Present:  Wolohojian, Henry, & Hershfang, JJ.


Common Day of Rest.  Practice, Civil, Summary judgment, Class
     action.  Statute, Construction.  Sale.



     Civil action commenced in the Superior Court Department on
January 22, 2020.

     The case was heard by Catherine H. Ham, J., on a motion for
summary judgment.


     Raven Moeslinger for the plaintiffs.
     David H. Rich for the defendants.

---

     [1] Individually and on behalf of all others similarly
situated.

     [2] Victoria Perez, individually and on behalf of all others
similarly situated.

     [3] Bella Sante Wellesley, LLC; Tiffany Amorosino; and Cara M.
Finnegan.

HENRY, J.  The "Sunday closing laws," "Blue Laws," or "Common Day of Rest Law[s]," G. L. c. 136, §§ 1-11,[4] prohibit business activities on Sundays but provide for numerous exemptions.  One of those exemptions, G. L. c. 136, § 6 (50), permits the retail sale of goods.  Prior to January 1, 2023, G. L. c. 136, § 6 (50), as amended through St. 2018, c. 121, §§ 5-8, required certain employers that sold goods at retail to pay employees premium pay for hours worked on Sunday (Sunday pay).[5]  This case presents the question whether an employer who principally provided beauty and massage therapy services, which are exempted or permitted activities that did not require Sunday pay, see G. L. c. 136, § 6 (54), (54 1/2), may still have been required to pay Sunday pay to employees engaged in ancillary retail sales before that requirement was phased out.  Because the statutory exemptions for beauty and massage therapy services

_____

[4] Section 1 of G. L. c. 136 states that "[s]ections one to eleven, inclusive, of this chapter may be cited as the Common Day of Rest Law," so we refer to the scheme by the name as defined in the statute.  See Zayre Corp. v. Attorney Gen., 372 Mass. 423, 424 (1977) (referring to "'Sunday closing laws,' 'Blue Laws' or 'common day of rest laws'").

[5] Pursuant to G. L. c. 136, § 6 (50), as amended through St. 2018, c. 121, §§ 5-8, until December 31, 2022, certain employers were required to pay Sunday pay -- a percentage increase on an employee's hourly rate for hours worked on Sunday, similar to overtime -- to employees who engaged in the retail sale of goods on Sunday.  The Sunday pay requirement has since been phased out by the Legislature and is no longer required as of January 1, 2023.  See St. 2018, c. 121, § 9.  See part 2, infra.

do not allow the retail sale of goods on Sunday, and because the employer was a "store or shop" as used in § 6 (50), which authorized the retail sale of goods subject to the Sunday pay requirement, we vacate the order allowing summary judgment in favor of the employer.

Background.[6]  Plaintiffs Daniel Chapoteau and Victoria Perez commenced a putative class action suit against the defendants, Bella Sante, Inc., Bella Sante Wellesley, LLC, Tiffany Amorosino, Cara M. Finnegan (collectively, Bella Sante or employer), claiming that Bella Sante failed to pay Sunday pay to them and other employees as required by G. L. c. 136, § 6 (50), as amended through St. 2018, c. 121, §§ 5-8.  Each of Bella Sante's three locations[7] employs massage therapists, spa concierges, nail technicians, and estheticians; the Wellesley location also employs hair stylists.  All locations sell beauty products, including on Sundays.  These beauty products include items such as creams, cleansers, lotions, body scrubs, toners,

---

[6] In reviewing a grant of summary judgment, we view the undisputed facts in the light most favorable to the nonmoving parties.  See Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).

[7] Bella Sante, Inc., operates the Boston location, and Bella Sante Wellesley, LLC, operates the Wellesley location.  A third company, Gromax Enterprise, Inc., operates the Lexington location and was not named in this suit.

soaps, serums, moisturizers, masks, gels, lip gloss, acne treatments, and nail polish.

The majority of Bella Sante's revenue is derived from fees paid for services. At each location, only about one percent of the square footage is dedicated to displays for the retail sale of beauty products. Nonetheless, a significant portion of Bella Sante's revenue comes from product sales. From 2017 through 2019, approximately twenty percent of Bella Sante's revenue was generated from product sales. In total, the three spas collectively made over $2.4 million in product sales during that time period, including sales on Sundays.

Bella Sante's massage therapists, nail technicians, estheticians, and hair stylists earn the majority of their income through services but are able to earn additional income through commissions on their retail sales of beauty products. Spa concierges are paid an hourly wage, do not receive commissions on product sales, and do not have sales targets, although Bella Sante requires concierges to encourage customers to purchase products. While some of the employees have sales targets, no employee has been terminated for failing to meet those goals, although one spa concierge was verbally reprimanded.

Neither of the named plaintiffs, nor any of the other employees, was paid Sunday pay for hours worked on Sundays.

Chapoteau worked at the Wellesley location from 2014 until January 2020 as a licensed massage therapist. He was paid on commission, based nearly exclusively on the value of massage therapy sessions he performed.[8] For any product sales, of which Chapoteau made very few, he was paid on commission.[9] Perez worked as a spa concierge at the Boston location. She was paid an hourly wage and did not receive any commissions on product sales.

In January 2020, Chapoteau and Perez commenced this putative class action against Bella Sante, alleging that because Bella Sante sold beauty products at retail on Sundays, it was required to pay employees Sunday pay, and that its failure to do so violated G. L. c. 136, § 6 (50), as amended through St. 2018, c. 121, §§ 5-8. They sought relief for the nonpayment of the Sunday pay pursuant to the Wage Act, G. L. c. 149, §§ 148, 150. Bella Sante moved for summary judgment, arguing that because it provides beauty and massage therapy services, which are separately exempt business activities under G. L. c. 136, § 6 (54), (54 1/2), it was not required to pay employees Sunday pay. The motion judge agreed with Bella Sante and granted it summary judgment. This appeal followed.

---

[8] Chapoteau also received tips from customers.

[9] Chapoteau was paid only $149.35 in commissions for product sales in 2019.

Discussion. 1. Standard of review. "We review the allowance of a motion for summary judgment de novo." Genworth Life Ins. Co. v. Commissioner of Ins., 95 Mass. App. Ct. 392, 394 (2019), citing Federal Nat'l Mtge. Ass'n v. Hendricks, 463 Mass. 635, 637 (2012). "In so doing, we consider 'whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.'" Genworth Life Ins. Co., supra, quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).

2. Statutory framework. Our analysis begins with an examination of the actual words of the common day of rest law and the fundamental purpose of the statutory scheme. "A fundamental tenet of statutory interpretation is that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result." Marengi v. 6 Forest Rd. LLC, 491 Mass. 19, 24-25 (2022), quoting Sullivan v. Brookline, 435 Mass. 353, 360 (2001).

The "general philosophy" of the common day of rest law "is to begin with a general prohibition of all work, labor and amusements on Sunday and then to engraft on that general prohibition the exemptions which the Legislature deems required by necessity or the general purpose of the statute." Zayre

Corp. v. Attorney Gen., 372 Mass. 423, 429 (1977). See G. L. c. 136, § 5. Any business that is open on Sunday is subject to criminal prosecution[10] and a fine,[11] unless the activity falls within at least one of more than fifty exemptions, see G. L. c. 136, § 6 ("Section five shall not prohibit the following: . . .").

Three of the exemptions under § 6 are at issue here. Section 6 (54) permits "[t]he cutting and styling of hair, manicuring, and the furnishing of related cosmetological and beauty services" (beauty services), and § 6 (54 1/2) permits "[t]he performance of massage therapy services by a massage

---

[10] Section five of the common day of rest law allows for criminal punishment of employers who fail to close on Sunday without a qualifying exemption. See G. L. c. 136, § 5. See, e.g., Commonwealth v. Great Atl. & Pac. Tea Co., 404 Mass. 476, 476-477 (1989) (company "found guilty on three complaints charging it with unlawfully keeping open [two locations] in violation of G. L. c. 136, § 5"). The plaintiffs here are pursuing their claims not criminally under § 5, but instead civilly under G. L. c. 149, § 150. The plaintiffs argue that Bella Sante's failure to pay the Sunday pay was a violation of its obligation to pay the plaintiffs the full amount of their earned wages when they became due and payable, in violation of G. L. c. 149, § 148.

[11] "Whoever on Sunday keeps open his shop, warehouse, factory or other place of business, or sells foodstuffs, goods, wares, merchandise or real estate, or does any manner of labor, business or work, except works of necessity and charity, shall be punished by a fine of not less than twenty dollars nor more than one hundred dollars for a first offense, and a fine of not less than fifty dollars nor more than two hundred dollars for each subsequent offense, and each unlawful act or sale shall constitute a separate offense." G. L. c. 136, § 5.

therapist licensed pursuant to [G. L. c. 112, § 228]" (massage therapy services).  In addition, § 6 (50) permits "[t]he keeping open of a store or shop and the sale at retail of goods therein, . . . and the performance of labor, business, and work directly connected therewith on Sunday" (retail sale of goods).

The exemptions for beauty and massage therapy services have never required Sunday pay.  By contrast, during the relevant time period, the exemption for the retail sale of goods required "[a]ny store or shop which qualifies for exemption under this clause . . . and which employs more than a total of seven persons, including the proprietor, on Sunday or any day throughout the week," to pay Sunday pay to employees "engaged in the work performed on Sunday pursuant to the provisions of this clause . . . ."  G. L. c. 136, § 6 (50), as amended through St. 2018, c. 121, §§ 5-8.

For many years the Sunday pay rate was one and one-half times an employee's regular hourly rate, similar to overtime. Starting in 2019, the Sunday pay rate was reduced by one-tenth of one percent as part of legislation that increased the minimum wage over a period of years, until January 1, 2023, when the Sunday pay rate was phased out entirely.  See St. 2018, c. 121, § 5, effective Jan. 1, 2019; St. 2018, c. 121, § 6, effective Jan. 1, 2020; St. 2018, c. 121, § 7, effective Jan. 1, 2021; St. 2018, c. 121, § 8, effective Jan. 1, 2022; St. 2018, c. 121,

§ 9, effective Jan. 1, 2023. Thus, businesses that sold goods at retail on Sunday under the § 6 (50) exemption were subject to the Sunday pay requirement through December 31, 2022, which encompasses the entirety of the alleged nonpayment of the plaintiffs.

3. Statutory interpretation. In arguing that no Sunday pay was required, the employer relies on exemptions that allow businesses to offer beauty and massage therapy services on Sunday. See G. L. c. 136, § 6 (54), (54 1/2). These exemptions allow certain types of business activities to be performed. Nothing in either exemption permits the retail sale of goods. An employer that provides both exempted and nonexempted services does not thereby exempt the latter; "a store that is lawfully open for some kinds of business may nonetheless be prosecuted for being open for business in violation of the act." Commonwealth v. Great Atl. & Pac. Tea Co., 404 Mass. 476, 479 (1989). In other words, "[t]he various clauses in § 6 do not qualify each other. Each must be read independently." (Quotation omitted.) Id. at 478. See Ralph's Market, Inc. v. Beverly, 353 Mass. 588, 590 (1968) (business was permitted to sell items specifically enumerated in § 6, including certain foodstuffs, but not all foodstuffs generally).

Massachusetts cases demonstrate application of the statute. In Great Atl. & Pac. Tea Co., 404 Mass. at 477, the employer was

permitted to sell various items, including newspapers, fuel and lubricating oil, and State lottery tickets, pursuant to at least ten different exemptions under § 6, yet was found guilty under § 5 of violating the common day of rest law for selling canned goods before noon, an activity that was not covered by an exemption.[12]  The Supreme Judicial Court rejected the employer's argument that by virtue of being lawfully open for business on Sunday to sell certain items, the business was permitted to sell other nonexempt items.  See id. at 478-479.  Similarly, in Commonwealth v. Graham, 176 Mass. 5, 6 (1900), where a duly licensed victualer ran a restaurant and also sold cigars, the Supreme Judicial Court rejected the defendant's argument that if the defendant's "principal business was supplying meals," she could not be guilty of violating a precursor to the common day of rest law.[13]  Id.  The court held that "[i]f one of her purposes in keeping the place open was the sale of cigars she was guilty of the offense charged."  Id.  In other words, even though the victualer was lawfully operating under the victualer

_____

[12] At the time, the § 6 (50) exemption for the general retail sale of goods applied only after noon.  See Great Atl. & Pac. Tea Co., 404 Mass. at 478-480.

[13] In Graham, 176 Mass. at 6, the defendant violated St. 1895, c. 434, § 2, which also prohibited the opening of businesses on Sunday.  See Local 1445, United Food & Commercial Workers Union v. Police Chief of Natick, 29 Mass. App. Ct. 554, 555-558 (1990) (discussing history of Lord's Day laws becoming secular common day of rest law over time).

exemption to the common day of rest law, she was not authorized to sell cigars.

While Bella Sante has demonstrated that it was permitted to perform some activities on Sundays -- namely, beauty and massage therapy services -- the exemptions that allowed those activities did not allow retail sales.  If Bella Sante was permitted to sell goods at retail on Sundays, that permission came from § 6 (50), which required Sunday pay.[14]  The alternative is that Bella Sante was selling the goods at retail in violation of § 5.

The question then becomes whether, pursuant to § 6 (50), Bella Sante is a "store" or "shop" that sells goods at retail on Sundays such that it may have been required to pay some employees Sunday pay.[15]  By a plain reading of the common day of rest law, Bella Sante is both.  A store is "a place where traffic is carried on in goods, wares, or merchandise" (citation omitted), Commonwealth v. Moriarty, 311 Mass. 116, 121 (1942),

---

[14] While § 6 allows for the retail sale of specific goods without requiring Sunday pay, see, e.g., G. L. c. 136, § 6 (18) (tires, batteries, and automotive parts for emergency use) and § 6 (28) (greeting cards and photographic films), Bella Sante was not selling those goods here and cannot take refuge from the Sunday pay requirement under those subsections.

[15] The "sale at retail of goods," G. L. c. 136, § 6 (50), occurs within each Bella Sante location, a point which Bella Sante does not contest.  See Commonwealth v. Moriarty, 311 Mass. 116, 121 (1942) ("The word 'retail' imports primarily that the sale or traffic in goods, wares or merchandise carried on in such 'stores' shall be in small quantities").

and a shop includes a "place of business," Commonwealth v. Chamberlain, 343 Mass. 49, 50-51 (1961), and "may include places of business that are not 'retail stores' or even 'stores,'" Moriarty, supra at 120. Based on this broad definition, the Supreme Judicial Court has held that both a laundromat, Chamberlain, supra, and a tavern, Moriarty, supra, constituted "shops." Here, Bella Sante is certainly a place of business, and its sale of various types of beauty products makes it a place where traffic is carried on in goods, wares, and merchandise, such that it is a store or a shop for purposes of § 6 (50).[16]

Bella Sante argues that because its spas are "primarily" engaged in beauty and massage therapy services, it should not be considered a "store" or "shop" within the meaning of § 6 (50). It is correct that Bella Sante is primarily a services company, as approximately eighty percent of its revenue is derived from

---

[16] Bella Sante argues that the previous cases interpreting the terms "store" and "shop" occurred under previous iterations of the common day of rest law and were thus superseded. However, "when the Legislature amends a statute it is aware of the prior state of the law as explicated by the decisions of this court, and where it has reenacted statutory language without material change, they are presumed to have adopted the judicial construction put upon it" (quotations and citation and omitted). Commonwealth v. Colturi, 448 Mass. 809, 812 (2007). Bella Sante's further argument that prior cases should be ignored as they involved criminal cases is unavailing. Where the common day of rest law can be enforced both civilly and criminally, we see no reason to interpret the terms differently for each purpose.

services, and only about one percent of its square footage is devoted to the retail sale of products.  However, § 6 (50) is not limited to only businesses known primarily as "retail store[s]," as Bella Sante contends, but instead applies to any store or shop which sells goods at retail therein.  This definition is in sharp contrast to other exemptions under § 6, where the Legislature used the word "primarily" when describing the nature of other exemptions.  See G. L. c. 136, § 6 (29) (permitting the "sale, at retail, of gifts, souvenirs, antiques, secondhand furniture, handcrafted goods and art goods, in an establishment primarily engaged in the sale of such merchandise, or on the premises of a licensed common victualler" [emphasis added]); G. L. c. 136, § 6 (30) (permitting the "opening of a store or shop primarily engaged in the retail sale of pets, and the sale therein of pets and articles necessary for the keeping, care and feeding of pets" [emphasis added]).  Unlike those exemptions, the § 6 (50) exemption is not limited only to those businesses engaged "primarily" in the retail sale of goods. "Where the Legislature used different language in different paragraphs of the same statute, it intended different meanings" (citation omitted). Commonwealth v. Williamson, 462 Mass. 676, 682 (2012).  The Legislature used the word "primarily" in § 6 (29) and § 6 (30) and chose not to in § 6 (50).  "This use of different language strongly suggests the legislative intent

to convey a different meaning." Williamson, supra. We therefore reject the argument that § 6 (50) should apply only to those businesses engaged "primarily" in retail sales.[17]

This construction does not "re-write" the common day of rest law or "reclassify" Bella Sante as a "retail store[] or shop[]," as Bella Sante contends, even where retail sales may be ancillary to the employer's primary purpose. Instead, it supports the underlying purpose of the statutory scheme of creating an "economic disincentive for employers and providing additional compensation to employees with respect to work done on Sunday" (quotation and citation omitted). Sullivan v. Sleepy's LLC, 482 Mass. 227, 235 n.16 (2019). Prior to 2023, a business that was primarily engaged in nonretail activity, such as a spa or hair salon, but that engaged in a small amount of retail sales (and had at least seven employees)[18] could have avoided the Sunday pay requirement by selling goods at retail only on Monday through Saturday, or it could have continued to sell goods at retail on Sunday and paid employees engaged in that activity Sunday pay as required by the statutory scheme.

---

[17] As noted above, even if Bella Sante were correct that it is not a "store" or "shop" within the meaning of § 6 (50), no other exemption permitted it to sell goods at retail on Sunday.

[18] Bella Sante's vice-president of operations testified that it always had at least seven employees at the relevant locations. Bella Sante has not contested that it met the threshold number of employees.

This interpretation is consistent with the plain meaning of the statute, the prior case law, and the over-all purpose of the common day of rest law.[19]

Conclusion.  The order allowing summary judgment is vacated, and the matter is remanded to the Superior Court for further proceedings consistent with this opinion.[20]

So ordered.

---

[19] The parties did not brief and we do not reach the question of which employees Bella Sante was required to pay Sunday pay, or in what amount.  Those questions are to be determined on remand.

[20] The plaintiffs' request for appellate attorney's fees is denied.