ALLEN KNOWLES & others[1] *vs.* CODEX CORP. & others.[2]

Norfolk.   September 9, 1981. — October 14, 1981.

Present: HALE, C.J., GOODMAN & GRANT, JJ.

*Practice, Civil,* Parties. *Municipal Corporations,* Conservation commission, By-laws and ordinances. *Zoning,* Validity.

Allegations in a complaint that the defendant corporation had misrepresented its intentions concerning a proposed development in a brochure which it distributed to all the registered voters of a town prior to a town meeting, that the voters relied on those misrepresentations in voting to rezone the area to permit the development, and that, following the rezoning, the defendant executed and recorded in the registry of deeds a formal instrument, enforceable by the town's conservation commission, which differed from the plan circulated to the voters failed to state a claim against either the corporation or the members of the conservation commission upon which relief in the form of damages, the invalidation of the town meeting vote, or an injunction to ensure the corporation's compliance with the plan which had appeared in the brochure could be granted to any of the plaintiffs who were either registered voters of the town or abutters of the area being redeveloped. [498-500].

CIVIL ACTION commenced in the Superior Court Department on October 20, 1980.

The case was heard by *Brogna, J.,* on motions to dismiss.

*Joan A. Lukey* for the plaintiffs.

*James E. McGuire (Rowena Conkling* with him) for Codex Corporation.

*Joseph H. Malloy,* Town Counsel, for the town of Canton & others.

---

[1] Sylvia Giannelli, Robert L. Keighton, Ethel Berkovitz and Lorraine Payne.

[2] The town of Canton and all the members of its conservation commission except the plaintiff Knowles.

GRANT, J.  This case presents another aspect of the continuing litigation over the so called Prowse Farm (farm) in Canton.  See *MacKeen* v. *Canton*, 379 Mass. 514 (1980).  It takes the form of an appeal by the plaintiffs from a judgment of the Superior Court which dismissed their action on the ground that their amended complaint (complaint) failed to state a claim upon which relief could be granted. Mass. R.Civ.P. 12(b)(6), 365 Mass. 755 (1974).[3]

The opening paragraph of the complaint advises that "[t]his is a class action[4] seeking damages and injunctive relief for misrepresentation, breach of condition subsequent, breach of promise, and violation of a conservation easement and/or General Laws Chapter 184, § 32 concerning conservation restrictions."  The plaintiff Knowles is a resident of and voter in Canton; he is a "concerned environmentalist who makes use of the Blue Hills Reservation and other publicly preserved conservation land, and is interested in the preservation of such land."  The plaintiff Giannelli is a resident of and voter in Canton; the plaintiff Keighton is a resident of Randolph, which abuts Canton; the plaintiff Berkovitz is a resident of Milton, which also abuts Canton; and the plaintiff Payne is a resident of Canton.  The plaintiffs allege that they are "representatives of a class comprised of Canton area residents who desire to have the [farm] preserved in its natural and historic state, who were entitled to the protection of a conservation easement imposed on the property, and whose desires and rights have been foiled by misrepresentations of the Codex Corporation concerning preservation of the [farm] and concerning the nature and extent of the conservation easement."  Codex is a foreign corporation authorized to do business in Massachusetts.  It now owns the farm and intends to construct a major office park on a portion of it.

---

[3] We find it unnecessary to consider other grounds set out by the judge in his order for judgment.

[4] The action was never certified as a class action under Mass.R.Civ.P. 23(b), 365 Mass. 768 (1974).

The following is a summary of the essential allegations of fact common to all four counts of the complaint. Codex's first effort to secure the rezoning of the farm necessary to the construction of the office buildings desired by it failed to pass at a special town meeting of the town of Canton held in September of 1977. Codex purchased the farm the following month. A further article for the necessary rezoning appeared in the warrant for the 1978 annual town meeting. A week prior to the adjourned session of that meeting at which the article was to be considered Codex mailed to each of the registered voters of the town[5] a brochure entitled "Save the Farm support Codex."

The brochure contained a copy of a formal instrument entitled "Grant of Conservation Easement and Declaration of Restrictive Covenants" which had been prepared by the town's conservation commission, which had been executed by Codex, and which bore the written approval of the town's board of selectmen under G. L. c. 40, § 8C, as most recently amended by St. 1975, c. 18. By the various provisions of the instrument Codex purported to subject the farm to perpetual restrictions running in favor of the town which were designed to "retain [the farm's] present character and use subject only to the limited development rights [therein] permitted" which Codex regarded as necessary to the construction of the office buildings desired by it for its corporate headquarters. Except in the area to be devoted to such buildings, which was said to be delineated on a plan referred to in the instrument, the uses of the farm were to be limited to animal husbandry, agriculture, horticulture and forestry; no buildings were to be constructed, placed or permitted to remain on the balance of the premises except ones which would be incidental to those uses.[6] The conservation

---

[5] We know from the *MacKeen* case, 379 Mass. at 515, that Canton has the open form of town meeting.

[6] There is no occasion to decide whether that instrument established a "conservation restriction" or a "preservation restriction" within the meaning of G. L. c. 184, §§ 31-33, as amended through St. 1977, c. 780.

commission or its successor was granted a permanent ease-
ment of access for the purposes of inspecting the premises
and enforcing the restrictions. The instrument explicitly
provided that "[t]he Commission, established under G. L.
c. 40, § 8C, shall have the right to enforce the rights of the
Town under this Grant and Declaration."

Also included in the aforementioned brochure were a plot
plan[7] and an open letter to the voters signed by an officer of
Codex. The plan depicted the locations of all the buildings
which existed on the farm at that time. The portion of the
farm to be devoted to office buildings (denominated "cam-
pus") bore the legend "maximum area 11 acres"; the re-
mainder of the premises (denominated "farm") bore the
legend "minimum area 44 acres." The letter contained a
statement that "[t]he farm, as shown on the plot plan on the
following page, will include all of the existing farm
buildings . . . ."[8]

At the session of the town meeting held on April 19, 1978,
the rezoning desired by Codex was passed by more than the
two-thirds vote required by the former G. L. c. 40A, § 7.[9]
The formal instrument which had been circulated to the
voters was recorded by Codex in the registry of deeds on
April 15, 1980, together with a definitive plot plan which
differed in some respects from the plan which had been ex-
hibited to the voters and bore the legends "Campus 13.795
Acres Note: Total Developed Area Not to Exceed 10.997
Acres" and "Farm 41.1945 Acres." On October 17 and 18,
1980, Codex demolished a number of the buildings depicted
on the plan which had been exhibited to the voters.

---

[7] It is not clear that this plan was the one referred to in the instrument.
The case has been argued to us on the basis that it was, and we have pro-
ceeded accordingly.

[8] An observant student of the plan might have concluded that at least
one of the existing buildings lay in the path of a proposed access road to
the "campus." An observant student of the formal instrument might have
concluded that nothing therein contained obligated Codex to maintain or
preserve any of the existing buildings.

[9] We take judicial notice of the fact that the vote was by secret ballots.
See the MacKeen case, 379 Mass. at 520.

Count one of the complaint (labeled "Misrepresentation") sets out the facts already summarized and contains further allegations to the effect (1) that Codex knowingly misrepresented its intentions concerning (a) the respective sizes of the areas to be devoted to office buildings and to the other uses and (b) the preservation and restoration of existing buildings and (2) that the voters relied on those representations in voting to rezone the farm; the theory is that the plaintiffs and others similarly situated are entitled to proceed as in a common law action for misrepresentation or deceit. Count two (labeled "Breach of Conditions Subsequent") proceeds on the theory that there have been breaches of conditions subsequent arising out of Codex's changing the respective sizes of the two areas in question and out of its alleged failures to adhere to various restrictions in the formal instrument. Count three (labeled "Breach of Promise") proceeds on the theory that Codex has committed breaches of contract by changing the respective areas and by failing to adhere to the restrictions in the formal instrument which are actionable at the behest of "the residents of Canton and surrounding areas." Count four (labeled "Conservation Easement") spins out various theories entertained by the plaintiffs concerning the possible legal effects of the instrument in differing sets of circumstances and alleges that the members of the conservation commission (other than the plaintiff Knowles) have been joined in the action as parties defendant because they have refused to join as parties plaintiff. There is no allegation that the commission has been requested to take any other action desired by the plaintiffs.

The prayers for relief are all grouped together at the end of the complaint, without any indication of the particular counts on which they may depend. The ultimate prayers, all of them addressed to Codex, are for damages in an amount equal to the cost of restoring all the buildings removed since the date of the town meeting in April, 1978[10]

---

[10] At the argument counsel for the plaintiffs was unable to tell us to whom the damages would be payable.

(or that Codex perform the restoration itself in "satisfactory fashion"[11]), that the vote adopted at that meeting be declared void, for injunctive relief forbidding the further removal of buildings and requiring the restoration of all the buildings depicted on the plan which appeared in the brochure, and for an order requiring Codex to subject to a statutory conservation restriction the entire forty-four acres which had been denominated "farm" on that same plan. There is no prayer that the conservation commission be ordered to take any kind of action.

We pass the question whether any of the supposed misrepresentations relied on in count one was directed to the likes of the plaintiffs (as opposed to the voters of the town acting in their corporate capacity), as well as the absence of any allegation to the effect that any of the plaintiffs voted in favor of the rezoning or did so in reliance on any misrepresentation. We do so because (as the plaintiffs agree in their brief) the sole objective of count one was to secure a declaration of the invalidity of the town meeting's vote to rezone the farm and because no such relief is available to the plaintiffs or anyone else in the circumstances of the present case. We think it axiomatic that a court will not entertain a claim for relief which necessarily depends for its proof on interrogating the voters as to how and why they exercised their rights to vote by secret ballot.[12] Equally fundamental, a court will not set aside the act of a legislative body such as a town meeting simply because a vote may have been influenced by mistaken beliefs. See, e.g., *Simon* v. *Needham*, 311 Mass. 560, 566 (1942). Indeed, as counsel for the plaintiffs conceded at the argument, a court would not set aside an act of Legislature even if it could be proved that all the votes in favor of the act had been induced by bribery.

We are of opinion that counts two and three fail for the reason (if no other) that none of the plaintiffs has standing

---

[11] See *Channel Fish Co.* v. *Boston Fish Mkt. Corp.*, 359 Mass. 185, 187 (1971).

[12] See note 9, *supra*.

to pursue either of the claims or theories sought to be advanced in those counts. The present case raises no implication of private nuisance and does not fall within any of the narrowly defined classes of cases in which the Legislature has conferred standing on private individuals who may wish to litigate questions concerning the allegedly wrongful use of public or private lands. See, e.g., G. L. c. 40A, § 17, as most recently amended by St. 1978, c. 478, § 32; G. L. c. 41, § 81Y, as appearing in St. 1953, c. 674, § 7; G. L. c. 41, § 81BB, as appearing in St. 1957, c. 199, § 2; G. L. c. 214, §§ 3(10) and 7A, both as appearing in St. 1973, c. 1114, § 62.[13] As the plaintiffs have recognized at several points in their complaint, it is the conservation commission which was specifically charged with the responsibility for enforcing the town's rights under the formal instrument. That charge was and is entirely consistent with the specific mandate of G. L. c. 40, § 8C (as appearing in St. 1971, c. 893, § 3), that, in towns which have conservation commissions, it is they rather than private individuals who are to "manage and control" the public's interests in lands which are subject to conservation restrictions and easements. See and compare *Ames* v. *Attorney Gen.*, 332 Mass. 246, 249, 252-253 (1955); *Loschi* v. *Massachusetts Port Authy.*, 354 Mass. 53, 60, cert. denied, 393 U.S. 854 (1968). Contrast *Concord* v. *Attorney Gen.*, 336 Mass. 17, 27-28 (1957).

In our view, count four fails to allege any set of facts which would authorize or require a court to expound on whatever principles of law may be applicable in the circumstances. See and compare *Stretch* v. *Timilty*, 309 Mass. 267, 269-270 (1941); *Ames* v. *Attorney Gen.*, 332 Mass. at

---

[13] We note that the cases on which the plaintiffs place their principal reliance turn on the question of standing under a specific statutory provision. See *Sierra Club* v. *Morton*, 405 U.S. 727 (1972), and *United States* v. *SCRAP*, 412 U.S. 669 (1973), both of which turn on the proper interpretation of the words "adversely affected or aggrieved" which appear in 5 U.S.C. 702. See generally *Save the Bay, Inc.* v. *Department of Pub. Util.*, 366 Mass. 667, 672 (1975).

249-253; *Senkarik* v. *Attorney Gen.*, 357 Mass. 211, 212 (1970). Contrast *Attorney Gen.* v. *Trustees of Boston Elev. Ry.*, 319 Mass. 642, 656-658 (1946); *Woods* v. *Newton*, 349 Mass. 373, 378-380 (1965).

Finally, the plaintiffs complain that they were unfairly deprived of an opportunity to respond to certain affidavits and other materials which were submitted by the defendants. See Mass.R.Civ.P. 12(b), 365 Mass. 755-756 (1974). One answer is that even if all the assertions in all the affidavits which were filed were melded into the allegations of the complaint, it would still fail to state a claim upon which relief could be granted to any of the plaintiffs. Another answer is that even now the plaintiffs do not tell us what it was they wanted to bring to the judge's attention.

*Judgment affirmed.*