PHYLLIS ANDRADE & others[1] *vs.* CITY COUNCIL OF
GLOUCESTER & others[2].

Essex. November 9, 1989. - December 18, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Moot Question. Municipal Corporations*, Referendum. *Referendum. Words*, "Measure."

This court expressed its opinion whether a city council's vote determining the percentages of the municipal tax levy to be borne by various classes of property was subject to the referendum petition process, although there appeared to be no present controversy before the court, where the question raised was one of public importance; where there was a likelihood that the controversy could recur by a challenge to a future vote setting the tax factor; and where, in view of the time needed to complete preparation of the case in the trial court, the question, once raised, could evade judicial review. [339]

A vote by a city council determining the percentages of the local tax levy to be borne by the various classes of real and personal property in the city did not constitute a "measure" subject to the referendum provisions of the city's charter and G. L. c. 43, § 42. [339-342]

CIVIL ACTION commenced in the Superior Court Department on February 2, 1989.

The case was reported to the Appeals Court by *Cortland A. Mathers*, J. The Supreme Judicial Court granted a request for direct review.

*Christopher M. Welch* for the plaintiffs.

*Linda Thomas Lowe*, City Solicitor, for the defendants.

[1] And other registered voters in the city of Gloucester.

[2] The mayor, the treasurer, and the acting tax collector of the city of Gloucester.

*Gary S. Brackett* & *Arthur J. Goldberg*, for City Solicitors & Town Counsel Association, amicus curiae, submitted a brief.

GREANEY, J. The dispute in this case centers on a vote taken by the city council of Gloucester (city council) on September 27, 1988, which determined the percentages of the local tax levy to be borne by the various classes of real and personal property in the city. This determination of the tax factor was made pursuant to the statutory procedure governing the administration of local property taxes. G. L. c. 40, § 56 (1988 ed.) ("the city council . . . in each city . . . shall annually first determine the percentages of the local tax levy to be borne by each class of real property . . . and personal property for the next fiscal year"). The plaintiffs, a group of Gloucester residents, challenged the September 27 vote by a referendum petition bearing the signatures of the requisite number of Gloucester registered voters. The Gloucester registrar of voters certified the signatures on October 21, 1988. On November 3, 1988, the city council decided, on the advice of legal counsel, that the vote of September 27 was not subject to referendum. The city council also voted not to rescind the earlier vote.

The plaintiffs commenced an action in the Superior Court on February 2, 1989, seeking declaratory and other relief to the effect that the September 27 vote constituted a "measure" subject to referendum under § 9-3 of the Gloucester city charter and the provisions of G. L. c. 43, § 42 (1988 ed.). The parties prepared a statement of agreed facts (the essential parts of which are set forth above), and a judge in the Superior Court reported the case to the Appeals Court. We granted the plaintiffs' application for direct appellate review. We conclude that the issue presented has become moot. However, because the issue is important, and might recur, we exercise our discretion to express our views on the issue.[3]

---

[3]At this point it is appropriate to acknowledge the helpful brief filed by the City Solicitors and Town Counsel Association as amicus curiae.

1. The tax bills for fiscal year 1989 have been sent out and the taxes collected by the city. The current fiscal year's tax classification vote has been taken by the city council, and it has not been made the subject of challenge by referendum petition. There appears to be no present controversy before the court. See *Brown* v. *City Council of Cambridge*, 289 Mass. 333, 334 (1935).

However, the question raised is one of public importance not only to Gloucester but also to other municipalities. There is a likelihood that the controversy could recur by a challenge to a future vote setting the tax factor. In view of the time needed to complete preparation of the case in the trial court, there is a good chance that the question, once raised, could evade judicial review. We conclude that the uncertainty presented by the issue should be settled and, therefore, we shall state our views despite the mootness of the case. See *Karchmar* v. *Worcester*, 364 Mass. 124, 136 (1973).

2. Section 42 of c. 43 of the General Laws provides that "the final passage of any measure" (except a revenue loan order) by a city council or a school committee may be presented for voter approval in a referendum petition.[4] For purposes of this case, we assume that the plaintiffs have essentially complied with the requirements of the statutory procedure for preparing a referendum petition notwithstanding some discrepancies in the form of their documents. See *Lafleur* v. *Chicopee*, 352 Mass. 746, 753 (1967). Thus, if the

---

[4]The pertinent part of c. 43, § 42, reads as follows:

"If, within twenty days after the final passage of any measure, except a revenue loan order, by the city council or by the school committee, a petition signed by registered voters of the city, equal in number to at least twelve per cent of the total number of registered voters . . . protesting against such measure or any part thereof taking effect, is filed with the city clerk, the same shall thereupon and thereby be suspended from taking effect; and the city council or the school committee . . . shall immediately reconsider such measure or part thereof; and if such measure or part thereof is not entirely rescinded, the city clerk shall submit the same . . . to a vote of the registered voters of the city . . . and such measure or part thereof shall forthwith become null and void unless a majority of the registered voters voting on the same at such election vote in favor thereof."

Section 9.3 of the Gloucester city charter parallels the statute.

September 27 vote constituted "the final passage of any measure," the plaintiffs would have been entitled to have their referendum petition placed on the ballot for consideration by the voters of Gloucester.

The term "measure" is defined as "an ordinance, resolution, order or vote passed by a city council." G. L. c. 43, § 37 (1988 ed.).[5] In construing the term in previous cases, we have considered instructive the distinction between legislative and executive acts, reasoning that only the former constitute "measure[s]" subject to referendum petition. See, e.g., *Gould* v. *City Council of Newburyport*, 392 Mass. 302 (1984); *Moore* v. *School Comm. of Newton*, 375 Mass. 443 (1978); *Fantini* v. *School Comm. of Cambridge*, 362 Mass. 320 (1972); *Gorman* v. *Peabody*, 312 Mass. 560 (1942); *Dooling* v. *City Council of Fitchburg*, 242 Mass. 599 (1922). See also 5 E. McQuillin, Municipal Corporations § 16.55, at 265 (3d ed. rev. 1989) (noting that the referendum power is generally restricted to legislative acts).

In applying the legislative-executive test, we have noted that the crucial inquiry is "whether the proposition is one to make new law or to execute law already in existence." *Moore* v. *School Comm. of Newton, supra* at 447, quoting 5 E. McQuillin, *supra* at § 16.55, at 266. See *Dooling* v. *City Council of Fitchburg, supra* at 601-602 (defining a legislative act as "the laying down of a rule, a principle or a law by which the conduct of a public officer may be guided"). We are satisfied that the September 27 vote setting the tax factor was an executive act.

The authority to establish the residential tax factor under G. L. c. 40, § 56, has been conferred by the Legislature on boards of selectmen in towns and on city councils, "together with the . . . approval" of mayors, in cities. The board of selectmen, in many municipalities, constitutes the chief executive office of a town, and the board's vote is not subject under the statute to the approval of the town meeting. Thus,

---

[5]A virtually identical definition of "measure" is contained in § 10.9(i) of the Gloucester city charter.

in many of the Commonwealth's municipalities, the decision
as to the tax factor is made solely by the executive body.
Prior to 1982, in cities, the primary determination of the tax
factor was made by the board of assessors or by the mayor
subject to approval by the city council. This decision was
clearly an executive act. Since 1982, the tax factor in cities is
determined by the city council with the mayor's approval.
The primary authority in the area, which has also been con-
sidered executive in nature, was thus transferred from the
assessors or mayor to the city council. We doubt that the
Legislature would want the tax factor decision considered as
different in substance depending on whether the decision is
made in a town or a city.

The statutory process also makes it clear that several mu-
nicipal officers and boards, as well as State officers, are inti-
mately involved in the complex process of setting the tax
rate. The board of assessors is required to furnish informa-
tion to the Commissioner of Revenue so that he can: (a) cer-
tify that the board is assessing property at full and fair cash
value; and (b) determine a minimum residential tax factor
pursuant to G. L. c. 58, § 1A (1988 ed.). The board of asses-
sors must also provide information to the board of selectmen
or to the city council and mayor, as well as to the general
public, so that an intelligent decision can be made on the
residential tax factor and the percentage of the levy to be
borne by each class of property. See G. L. c. 40, § 56. The
Commissioner of Revenue then must give final approval to
the tax rate, which, once approved and returned to the asses-
sors, cannot be changed. See G. L. c. 59, § 23 (1988 ed.).
This process suggests that the various officials involved are
engaged in implementation of the laws which establish the
intricate process for the administration of the local property
tax. Thus, the September 27 vote of the city council of
Gloucester served to execute the existing tax laws. Due to its
primarily executive character, the setting of the tax factor
does not constitute a "measure," and is not subject to the
referendum petition process.

Our conclusion rests on one other consideration. We have held that prudential concerns of efficient government warrant placing certain limitations on the definition of "measure." "In ascertaining the intent of the Legislature with respect to the scope and nature of the referendum powers that it has conferred, it is appropriate and important to consider what the consequences of applying [them] to a particular act of legislation would be, and, if it is found that the exercise of those powers tends to destroy the efficacy of other governmental mandates, the court ought not to place such an interpretation upon the grant of the referendum powers as to bring about any such result." *Gilet* v. *City Clerk of Lowell,* 306 Mass. 170, 175-176 (1940). See *Dooling* v. *City Council of Fitchburg, supra* at 602; 5 E. McQuillin, *supra* at § 16.55, at 265-266.

Considerable financial difficulty could follow from a decision that a city's tax factor could be made subject to referendum petition. If the tax factor were placed on a referendum and defeated by the voters, the city would be unable to send out its tax bills and thus would be unable to collect revenue. Furthermore, this confused state of affairs could persist for an extended period of time in view of the fact that the referendum could only invalidate the particular tax factor chosen without enacting a new tax factor in its place. The city council, following a referendum defeat, would have to adopt a new tax factor, which in turn might also be subjected to a referendum challenge. The potentially indefinite delay in collecting vital tax revenues could result in extreme fiscal distress for the city and considerable unnecessary borrowing to meet municipal needs. We cannot conceive that the Legislature intended such an impractical result.

3. The case is remanded to the Superior Court where a judgment is to be entered dismissing the complaint as moot.

*So ordered.*