LOCAL 1445, UNITED FOOD AND COMMERCIAL
WORKERS UNION & another[1] vs. POLICE CHIEF
OF NATICK & others.[2]

No. 90-P-883.

Middlesex. November 15, 1990. - November 28, 1990.

Present: KASS, KAPLAN, & IRELAND, JJ.

*Common Day of Rest. Practice, Civil*, Standing.

General Laws c. 136, § 10, conferred no standing upon members of the
    general public, either individually or in association, to seek either in-
    junctive relief or relief in the nature of mandamus from alleged viola-
    tions of G. L. c. 136, §§ 1-11, the Common Day of Rest Law. [558-
    559, 560]
Members of the general public, including a labor union, lacked standing to
    seek a declaration under G. L. c. 231A that a municipal chief of police
    had not validly granted permission in accordance with G. L. c. 136, § 7,
    for the operation of a certain retail store during morning hours on Sun-
    days in the month of December. [559-560]

CIVIL ACTION commenced in the Superior Court Depart-
ment on December 8, 1989.

The case was heard by *Robert J. Hallisey*, J., on a motion
to dismiss.

*Sandra C. Quinn* for the plaintiffs.
*Christopher A. Duggan* for William Filene's Sons
Company.
*David A. DeLuca* for Police Chief of Natick.
*James M. Shannon*, Attorney General, & *Alice Daniel*,
Deputy Attorney General, for the Commissioner of Labor &
Industries, submitted a brief.

---

[1]The Massachusetts Council of Churches.
[2]William Filene's Sons Company and James F. Snow, Commissioner of
Labor and Industries.

KASS, J. Some 350 years of history of Sunday laws in Massachusetts chronicle, depending on the point of view, their liberalization or erosion. The plaintiffs, Local 1445, United Food and Commercial Workers Union and the Massachusetts Council of Churches, apparently, apprehend erosion. They brought an action to enjoin Filene's from opening its store in the Natick Mall before noon on the first four Sundays of December, 1989, although Filene's had obtained a permit so to do issued in accordance with G. L. c. 136, § 7, by the police chief of Natick. December, 1989, has come and gone, and the controversy, as pleaded, is moot. But the question raised is one susceptible to repetition, yet likely to evade review, and it has a measure of public interest. See *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943); *Lockhart* v. *Attorney Gen.*, 390 Mass. 780, 783 (1984); *Andrade* v. *City Council of Gloucester*, 406 Mass. 337, 339 (1989). We, therefore, consider the questions presented.

During the Colonial era, the Sunday proscriptions were fundamental and comprehensive. "[P]laying, uncivil walking, drinking, travelling from town to town, going on shipboard, sporting, or in any way misspending that precious time," was forbidden conduct. So was "servile work . . . such as are not works of Piety, of Charity or of Necessity." Report of the Governor's Special Committee to Consider the Laws Relative to Lord's Day Observance, 1962 Senate Doc. No. 404, 18.[3] In 1791, the General Court passed a new Lord's Day Act, whose preamble left no doubt that the Commonwealth meant business about there being no business. The preamble pronounced: "Whereas the observance of the Lord's day, is highly promotive of the welfare of a Community, by affording necessary seasons for relaxation from labour & the cares of business; for moral reflections & conversation on the duties of life, & frequent errors of human conduct; for public and private worship of the Maker, Governor & Judge of the

___

[3]The quoted material is from a statute enacted in 1672 and also appeared in a document entitled "Report of the Committee on the Judiciary on Sunday Laws" produced by the Common Council of the City of Boston in 1887. Because it is more accessible, we cite to the 1962 document.

World and for those acts of charity which support and adorn the Christian Society. . . ." *Id.* at 19.

After the Civil War, exceptions to the sweeping prohibition of work and play on Sunday began to appear. Travel was permitted in 1887, so long as it was not work. The accelerating exceptions in this century are a study in changing mores. Operating ice cream parlors became lawful in 1902; engaging in amateur photography in 1908; operating a motor vehicle in 1914; unpaid gardening around a dwelling in 1930; Sunday golf in 1931; and dancing at a Sunday wedding in 1955. *Id.* at 20.

Conducting business on Sundays is still generally prohibited by G. L. c. 136, § 5. There follows in G. L. c. 136, § 6, a long list of activities not prohibited on Sundays. We are concerned with clause 50 of § 6, which permits retail businesses to open on Sunday at noon.[4] Under G. L. c. 136, § 7, as appearing in St. 1962, c. 616, § 2, the chief of police of a city or town[5] "may issue a permit for the performance on Sunday of necessary work or labor which could not be performed on any other day without serious suffering, loss, damage or public inconvenience, or which could not be performed on any other day without delay to military defense work."

By St. 1988, c. 311, § 2, a provision was added that permits for Sunday work and stores "shall not be granted without the approval of the department of labor and industries,

---

[4]Clause 50 was added by St. 1977, c. 722. In its 1977 form, clause 50 allowed retail stores to open on Sundays between Thanksgiving and Christmas. St. 1982, c. 556, extended the retail exemption to the rest of the year but introduced the prohibition on opening in the forenoon. See *Commonwealth* v. *Great Atl. & Pac. Tea Co.*, 404 Mass. 476, 479-480 (1989). Currently there are fifty-one clauses listing categories of exemptions. That is eight more categories than were listed in the most recent general recodification of the Common Day of Rest Law, St. 1962, c. 616, § 2. Many of the exception clauses have subcategories, some of which are curious joinings. Clause forty, for example, exempts work incident to religious exercises and preparation for trials by lawyers.

[5]In Boston it is the police commissioner, and in a town where there is no police department it is the chairman of the board of selectmen.

which shall approve such permits only on a uniform basis throughout the commonwealth."

Under the power conferred by G. L. c. 136, § 7, Dennis R. Mannix, the police chief of Natick, granted, to any retail store which requested it, permission to open before noon on the first four Sundays of December in 1989. He gave as his reasons, first, a desire to spread throughout an entire day the overcrowding and traffic congestion generated by heavy Christmas holiday shopping and, second, the convenience of people who "work or have religious or family commitments or are unable to shop during the Christmas season except on Sunday."

On December 7, 1988, the Department of Labor and Industries announced that, "[i]n order to meet the pressing needs of retailers during this holiday season, [it would] consider approved all Sunday opening permits granted by local authorities under G. L. c. 136, § 7, . . . until further notice." Such, the Department states in its brief, continues to be its policy, i.e., there has been no "further notice." As the case was presented to us, the chief of police has this year again granted permission for retail openings before noon during the post-Thanksgiving stretch of the Christmas holiday shopping season.

In their first amended complaint, the plaintiffs asked for injunctive relief prohibiting Filene's from opening prior to noon and sought a declaratory judgment under G. L. c. 231A, § 2, determining, in substance, that the permits for the early opening were not based on a proper showing of necessity within the meaning of G. L. c. 136, § 7.[6]

Whatever its religious antecedents, the Sunday law is now, by its terms, called the Common Day of Rest Law. G. L. c. 136, § 1. It is a statute for the secular benefit — respite — of the general public. *Gallagher* v. *Crown Kosher Super Mkt. of Mass., Inc.,* 366 U.S. 617, 627-630 (1961). *Com-*

---

[6]After a judge of the Superior Court had dismissed the complaint on standing grounds, the plaintiffs moved to vacate judgment and to amend their complaint to ask for relief in the nature of mandamus. We shall comment on the mandamus claim later in this opinion.

*monwealth* v. *Has*, 122 Mass. 40, 42 (1877). *Zayre Corp.* v.
*Attorney Gen.*, 372 Mass. 423, 434, 444 (1977) (Braucher,
J., dissenting). There are criminal penalties, in the form of
fines, for its violation. G. L. c. 136, § 5. Beyond fines, the
statute confers upon the Attorney General (and also upon
district attorneys and, in cities and towns, upon the mayor,
city manager, city council, or board of selectmen) the au-
thority to bring actions in the Superior Court to enjoin any
violation of c. 136. The injunctive relief provision appears to
have had its origins in a recommendation made by a minority
of the committee which prepared the 1962 report. Injunctive
relief, the minority thought, would constitute an effective
means to discipline retailers who might otherwise regard the
relatively modest statutory fines as a reasonable cost of doing
business. See 1962 Senate Doc. No. 404 at 53, 60.

Concerning the criminal sanction in the Common Day of
Rest Law, its invocation lies in the discretion of prosecutorial
authority, not on complaint of members (whether individu-
ally or in association) of the general public. *Linda R. S.* v.
*Richard D.*, 410 U.S. 614, 619 (1973). *Whitley* v. *Common-
wealth*, 369 Mass. 961, 962 (1975). As to the injunction
sanction in G. L. c. 136, § 10, the category of persons who
may employ it is similarly limited. When, as in § 10, the
power to seek injunctions is expressly conferred upon speci-
fied public officers, we may assume that the Legislature did
not intend to create the private attorney general rights which
the plaintiffs purport to exercise. Such rights, when intended,
have been expressly granted. *Massachusetts Soc. of Optome-
trists* v. *Waddick*, 340 Mass. 581, 584 (1960). Compare
G. L. c. 93, § 12, c. 93A, §§ 9 & 11, and c. 93B, § 12A,
which expressly grant private rights of action in addition to
the Attorney General's enforcement powers. Compare also
G. L. c. 40A, § 17, and c. 41, § 81BB, limiting appeal of
administrative decisions in zoning and planning cases to ag-
grieved persons. When a statute confers standing in relation
to particular subject matter, that statute, rather than more
general ideas about standing, governs who may initiate legal
action in relation to the subject matter. *Boston Edison Co.* v.

29 Mass. App. Ct. 554                                559

Local 1445, United Food & Commercial Workers Union *v.* Police Chief of Natick.

*Boston Redev. Authy.*, 374 Mass. 37, 46 (1977). *Bello* v. *South Shore Hosp.*, 384 Mass. 770, 780 (1981). See *Knowles* v. *Codex Corp.*, 12 Mass. App. Ct. 493, 498-499 (1981). We have no difficulty concluding that only the public officers named in § 10 may bring proceedings to enjoin violations of G. L. c. 136.

The plaintiffs gain no ground in asking for a declaration under G. L. c. 231A[7] that the permission to open early was not validly granted, although in that context the basis for their lack of standing may rest on a slightly different and more general basis. The plaintiffs' interest in a more strict application of the Common Day of Rest Law is that they regard Sunday morning work as subversive of the respite which the statute is designed to produce. Views on public policy, although held with strong conviction and moral fervor, are not bases for standing to sue. *Valley Forge Christian College* v. *Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 486 (1982). *Pratt* v. *Boston*, 396 Mass. 37, 42 (1985).[8] Persons who ask a court to "assume the difficult and delicate duty of passing upon the acts of a coordinate branch of the government" must demonstrate that they suffer or are in danger of suffering some particularized legal harm. *Kaplan* v. *Bowker*, 333 Mass. 455, 459 (1956). *Brookline* v. *The Governor*, 407 Mass. 377, 387-389 (1990) (Liacos, C.J., concurring). Other phrases which attempt to catch what furnishes standing to maintain an action against the government are "that a personal interest is *directly* affected; that their *rights* have been impaired; that they have demonstrated *legally cognizable injury*; or shown a breach of any *duty*" (emphasis in original). *Id.* at 388. What emerges is that someone who may maintain an action against the government must be able to describe impairment of an economic or civic interest. So, for example: a store which is denied a

---

[7]A prayer for declaratory relief does not evade the requirement of standing. *Doe* v. *The Governor*, 381 Mass. 702, 704 (1980).

[8]Insofar as early Sunday openings may bear on the conditions of employment of the union's members, they are a proper subject for collective bargaining.

Sunday opening permit may challenge the lawfulness of the denial (see *Zayre Corp.* v. *Attorney Gen.*, 372 Mass. 423); a factory owner may challenge denial of a Sunday permit (see *Weinstein* v. *Chief of Police of Fall River*, 344 Mass. 314 [1962]); citizens, individually or through associations, may challenge laws bearing on the taxes they pay (see *Massachusetts Assn. of Tobacco Distribs.* v. *State Tax Commn.*, 354 Mass. 85, 88 [1968]; *Massachusetts Assn. of Indep. Ins. Agents & Brokers.* v. *Commissioner of Ins.*, 373 Mass. 290 [1977]).

Clause 50 of G. L. c. 136, § 6, provides that employees who work on Sunday shall be paid time and a half and shall not be required to work, and that an employee's refusal to work shall not be a basis for discharge or any other penalty. In the face of these protections the union is remitted to arguing that subtle pressures on its members to show up on Sunday mornings are inherent in the situation. This is too intangible a consequence to amount to impairment of economic or civic interest; it is not a legally cognizable injury. We need not consider whether an unincorporated association such as a labor union can bring a legal action on behalf of individual members in the absence of a showing of particularized harm to those members. Cf. *Save the Bay, Inc.* v. *Department of Pub. Util.*, 366 Mass. 667, 675 (1975).

Concerning the plaintiffs' postjudgment effort to amend their complaint to add a count in the nature of mandamus, the same standing problem confronts them. Moreover, the police chief's issuance of a permit fell in the category of a discretionary act, see *Weinstein* v. *Chief of Police of Fall River*, 344 Mass. at 318, a category of action which a court may not review in a mandamus proceeding. *Lutheran Serv. Assn. of New England, Inc.* v. *Metropolitan Dist. Commn.*, 397 Mass. 341, 344 (1986).

Having decided the case on the basis of the lack of legal standing of the plaintiffs, we do not reach the merits. We do not intimate an opinion whether the police chief, in granting permission to Filene's to open before noon on Sundays in December, exceeded his discretionary authority under G. L.

c. 136, § 7. Cf. *Weinstein* v. *Chief of Police of Fall River*, 344 Mass. at 318 (construing predecessor statute).

*Judgment affirmed.*