NORFOLK ELECTRIC, INC., & others[1] *vs.* FALL RIVER
HOUSING AUTHORITY.

Suffolk. December 9, 1993. - March 7, 1994.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Jurisdiction*, Administrative matter, Housing, Federal field. *Administrative Law*, Exhaustion of remedies, Regulations. *Housing. Housing Authority. Public Works*, Bidding procedure. *Contract*, Public works, Bidding for contract.

In an action seeking a declaration under G. L. c. 231A that the defendant housing authority was bound to follow the Commonwealth's competitive bidding laws governing the construction of public buildings in awarding a contract for the renovation of an existing low income housing development, this court determined that declaratory relief was appropriate notwithstanding the plaintiffs' failure to avail themselves of the administrative review procedure afforded by G. L. c. 149, § 44H, where the parties had stipulated to the facts and exhibits; where the position of the Department of Labor and Industries was clearly in opposition to the plaintiff's position, and it would have been futile for the plaintiffs to seek relief from the department; and where resolution of the issue was in the public interest. [209-211]

A public housing authority was not acting as a Federal agent, so as to excuse it from compliance with the requirements of G. L. c. 149, §§ 44A-44H, the Commonwealth's competitive bidding statute governing the construction of public buildings, when it renovated a housing project that it owned, with Federal funds awarded to it through the Comprehensive Grant Program developed under 42 U.S.C. § 14371 (1988), where receipt of Federal funds, without more, does not suffice to convert a local housing authority into an agent of the Federal government [213]; where the housing authority, and not the Federal government, had the day-to-day control of the operations and the modernization of the housing project [213-214]; where Federal law (24 C.F.R. § 85.36 [b] [1993]) required compliance with G. L. c. 149, §§ 44A-44H [214-215]; and where State law (G. L. c. 121B, § 11) did not provide to the contrary [215-218].

---

[1]Gilbert & Becker Co., Inc.; Montle Plumbing & Heating Co.; A & A Window Products, Inc.; and Associated Subcontractors of Massachusetts.

CIVIL ACTION commenced in the Superior Court Department on June 25, 1993.

The case was heard by *John L. Murphy, Jr.*, J., on a statement of agreed facts.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Peter J. Gagne* (*Joseph M. Corwin* with him) for the plaintiffs.

*William G. Camara* for the defendant.

GREANEY, J. The plaintiffs in this action are an association of subcontractors and four individual subcontractors who bid on, and perform, public building construction.[2] In the Superior Court, the plaintiffs sought a declaration under G. L. c. 231A (1992 ed.), that the defendant, Fall River Housing Authority (authority), was bound to follow the Commonwealth's competitive bidding laws governing the construction of public buildings, see G. L. c. 149, §§ 44A-44H (1992 ed.), in awarding a contract for the renovation of Hillside Manor, an existing low income housing development, located in Fall River. The plaintiffs also sought to enjoin the authority from awarding a contract in violation of the Commonwealth's competitive bidding laws. A judge in the Superior Court entered a preliminary injunction barring the authority from proceeding under bid documents issued in violation of G. L. c. 149, §§ 44A-44H. After a nonjury trial, another judge in the Superior Court concluded that the Commonwealth's competitive bidding laws did not apply to a renovation project wholly funded by the Federal government. Judgment was entered for the defendant and the plaintiffs appealed. We transferred the case to this court on our own motion. We conclude that the authority must comply with G. L. c. 149, §§ 44A-44H, in awarding the contract for the renovation of Hillside Manor.

---

[2] A subcontractor, which has the right to be considered as a subbidder on a contract for the construction of a public building, has standing to challenge the award of a construction contract alleged to violate G. L. c. 149, §§ 44A-44H (1992 ed.). See *Quincy Ornamental Iron Works, Inc.* v. *Findlen*, 353 Mass. 85, 86-88 (1967).

1. *Facts.* The parties' statement of agreed facts and exhibits indicate that the authority issued bid documents in June, 1993, for the renovation of Hillside Manor. The renovation project (designated Mass. Project 6-3) consists of the rehabilitation and modernization of residential apartments, construction of a community center, rehabilitation of an existing maintenance building, and the adaptation of an existing structure as a storage facility. The estimated cost of the project is between $5,000,000 and $10,000,000. The United States Department of Housing and Urban Development (HUD) has agreed to provide funds to the authority equal to the cost of the renovation contract through the Comprehensive Grant Program developed under 42 U.S.C. § 14371 (1988 & Supp. III 1991). This Federal legislation has as its primary purpose the improvement of "the physical condition of existing public housing projects." 42 U.S.C. § 14371(a)(1). Grants awarded through the Comprehensive Grant Program are subject to Federal regulations promulgated by HUD.

It is agreed that the bid documents issued by the authority do not comply with the requirements of G. L. c. 149, §§ 44A-44H. The documents fail to require: filed subbids in various statutory subtrade categories, see G. L. c. 149, § 44F (1); general contractor certificates of eligibility, see G. L. c. 149, § 44D (1) (*a*); and that general bids be submitted in accordance with the statutory bid form, see G. L. c. 149, § 44E (2). Due to the pendency of this appeal, construction on the project apparently has not commenced.

2. *Jurisdiction.* As an initial matter, this court's jurisdiction must be addressed.[3] General Laws c. 149, § 44H, outlines an administrative procedure before the Department of Labor and Industries (department) for resolution of a question concerning the applicability of the competitive bidding

---

[3] Neither party questioned the court's jurisdiction over this matter. The judge properly raised the issue of his own volition. See *Litton Business Sys., Inc.* v. *Commissioner of Revenue*, 383 Mass. 619, 622 (1981).

provisions to a contract for a public building.[4] The plaintiffs did not file a formal protest with the department before seeking declaratory relief in the Superior Court. As a general rule, a party's failure to exhaust administrative remedies precludes resort to a court for declaratory relief. See *Ciszewski* v. *Industrial Accident Bd.*, 367 Mass. 135, 140-141 (1975); *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination*, 364 Mass. 444, 446-451 (1973). In certain circumstances, exceptions to the general rule have been recognized. In cases where resort to an administrative agency obviously would be futile, and there is no fact-finding function for the agency to perform, a court may exercise jurisdiction despite a plaintiff's failure to exhaust administrative remedies. See *Construction Indus. of Mass.* v. *Commissioner of Labor & Indus.*, 406 Mass. 162, 166-167 (1989); *Ciszewski* v. *Industrial Accident Bd., supra* at 141; *Belfer* v. *Building Comm'r of Boston*, 363 Mass. 439, 441-442 (1973).

It was appropriate for the judge to exercise jurisdiction in this case. The parties have stipulated to the facts and exhibits. The judge found that, during the demolition phase of the project, the plaintiffs unsuccessfully sought relief from the department on the ground relied on in this appeal. The judge also noted that, in several recent decisions concerning other construction projects, the department has concluded that a local housing authority constructing a project with Federal assistance is an agent of the Federal government, and, therefore, exempt from compliance with the requirements of the Commonwealth's competitive bidding laws. The department's

---

[4]General Laws c. 149, § 44H (1992 ed.), provides, in pertinent part, as follows:

"[T]he commissioner of labor and industries or his designee shall enforce sections forty-four A to forty-four H, inclusive . . . . [The commissioner] shall have all the necessary powers to require compliance therewith including the power to institute and prosecute proceedings in the superior court to restrain the award of contracts and the performance of contracts in all cases where, after investigation of the facts, he has made a finding that such award or performance has resulted in violation, directly or indirectly, of the provisions of said sections forty-four A to forty-four H, inclusive . . . ."

position is clear, and it obviously would be futile for the plaintiffs to seek relief from the department. The question whether the competitive bidding laws apply to public construction projects funded by the Federal government is a matter of public interest, which affects the rights of subcontractors beyond those involved in the present controversy. See *Construction Indus. of Mass.* v. *Commissioner of Labor & Indus., supra* at 167. That question, as it applies to Hillside Manor, is one of law. Moreover, additional delay in the renovation of public housing should be avoided whenever possible. The case is properly before us.

3. *The judge's decision.* As has been indicated, the trial was based on a statement of agreed facts and exhibits. Over the plaintiffs' objection, the judge also accepted in evidence two letters from David Myers, chief of HUD's technical services branch in the Boston regional office. The first letter, dated March 4, 1993, concerned the "demolition phase" of the Hillside Manor renovation. With respect to procurement, that letter stated: "All references to State bidding requirements will be removed from said specification, especially filed sub-bids are not required."

The second letter, dated July 1, 1993 (after the authority issued the bid documents for the construction phase of the Hillside Manor renovation project), was sent to "provide [the authority] with guidance on the subject of procurement, specifically the State regulations for filed sub-bidders." Myers informed the authority that procurement associated with demolition, construction, or rehabilitation at Hillside Manor must comply with the Federal procurement regulations in 24 C.F.R. § 85.36 (1993), and the provisions of HUD Handbook 7460.8, REV-1 (Jan. 1993). The letter then quoted from a decision of the department, Carpenters Union Local No. 49 *vs.* Lowell Hous. Auth. (July 18, 1988), in which the department concluded that "[w]hen . . . a housing authority is functioning exclusively as an agent of the federal government, with only federal and no state funds on a federally controlled project in a federally operated building with tenants from a federal tenancy list, that housing authority is

not acting as an instrumentality of the Commonwealth or a political subdivision of the Commonwealth," and, consequently, the Commonwealth's competitive bidding laws do not apply. On the basis of this decision, Myers's letter informed the authority that it too was acting as an agent of the Federal government, and did not need to comply with the Commonwealth's competitive bidding laws in awarding the contract for the Hillside Manor renovation.

Apparently relying on Myers's letter of July 1, 1993, the judge concluded that "the documents submitted in the instant action disclose that [the authority] is functioning exclusively as an agent of the federal government, using only federal funds (that must be segregated for the project) on a federally-controlled project in a federally-operated building with tenants from a federal tenant list. Under these circumstances, the [authority] is not acting as an instrumentality of the Commonwealth or a political subdivision of the Commonwealth within the meaning of [G. L.] c. 149, § 44A."

The July 1, 1993, letter cannot support such a conclusion. The paragraph of the letter on which the judge appears to have relied was a quotation from a department decision pertaining to a wholly different project which is located in another city.[5] No other document before the judge confirmed that Hillside Manor is "federally operated" or "federally controlled," or that tenants are selected from a "federal tenant list." The agreed exhibits are to the contrary. The Annual Contributions Contract[6] between HUD and the author-

---

[5]That decision indicates that the building in Lowell being renovated was a Federal building and that "tenants living in the federal building are selected from a different list than are tenants living in the state-owned buildings." Funds for the renovation came from HUD, but not through the Comprehensive Grant Program. In its decision, the department stressed that its conclusion that the Commonwealth's competitive bidding laws did not apply depended on the wholly Federal character of the project. We express no opinion as to whether this decision was correct.

[6]Under 42 U.S.C. § 1437c (1988 & Supp. II 1990) the Secretary of HUD is authorized to make annual contributions to public housing agencies to assist in the development, acquisition, or maintenance of low income housing. 42 U.S.C. § 1437c(a)(1). The Secretary is directed to "embody the provisions for such annual contributions in a contract guaran-

ity identifies the authority as the owner of public housing in Fall River developed with HUD assistance. The bid documents for the construction project also identify the authority as the owner of Hillside Manor, and they indicate that the authority has operational control of the renovation of Hillside Manor.

Whether the authority acts as a Federal agent, so as to excuse it from compliance with the requirements of G. L. c. 149, §§ 44A-44H, when it renovates a housing project that it owns, with Federal funds awarded to it through the Comprehensive Grant Program, is a question of law, open for our resolution on this record. See *Cox* v. *New England Tel. & Tel. Co.*, 414 Mass. 375, 384 (1993). It is obvious that the receipt of Federal funds, without more, does not suffice to convert a local housing authority into an agent of the Federal government. In our opinion, HUD's regulations, binding on the agency, require that State procurement laws be followed in renovation projects funded through the Comprehensive Grant Program. No provision of State law excuses a housing authority from complying with the Commonwealth's competitive bidding laws when it renovates a development owned by it, unless the receipt of Federal funds is conditioned on compliance with Federal requirements superseding, or in conflict with, the provisions of G. L. c. 149, §§ 44A-44H.

4. *Receipt of Federal funds.* "The Federal Government in no sense controls 'the detailed physical performance' of all the programs and projects it finances by gifts, grants, contracts, or loans." *United States* v. *Orleans*, 425 U.S. 807, 816 (1976), quoting *Logue* v. *United States*, 412 U.S. 521, 528 (1973). A State housing authority is not a Federal agent merely because it receives Federal funds, is subject to audit by the Federal government, and must comply with Federal standards and regulations. *Orleans, supra* at 815. It is a Fed-

---

teeing their payment." *Id.* The authority entered an Annual Contributions Contract with HUD in 1962. An October, 1992, amendment to the contract provided for HUD assistance to the authority, through the Comprehensive Grant Program, for modernization of existing public housing.

eral agent only if "its day-to-day operations are supervised by the Federal Government." *Id.*

Federal legislation concerning subsidized housing "is superimposed upon and consciously interdependent with the substructure of local law relating to housing." *Kargman* v. *Sullivan*, 552 F.2d 2, 11 (1st Cir. 1977). State governments and local authorities retain a significant measure of control over the administration of, and policies pertaining to, public housing. See *Attorney Gen.* v. *Brown*, 400 Mass. 826, 829-831 (1987). This is particularly true with respect to renovation projects funded through the recently developed Comprehensive Grant Program, which has among its basic goals the provision of "considerable discretion to [public housing authorities] to decide the specific improvements [to existing public housing stock], the manner of their execution, and the timing of the expenditure of funds," 24 C.F.R. § 968.301 (2) (1993), and the allocation of "greater control in planning and expending funds for modernization, rehabilitation, maintenance and improvement of public housing developments," 24 C.F.R. § 968.301 (5) (1993), to public housing authorities. A public housing authority participating in the Comprehensive Grant Program develops its own five-year plan for the modernization of its existing stock of public housing, and it assumes responsibility for spending Federal grant funds in compliance with this plan. See 24 C.F.R. § 968.305 (1993). As a participant in the Comprehensive Grant Program, the authority, and not HUD, has day-to-day control of the operations and modernization of Hillside Manor. The authority cannot be said to be acting as an agent of the Federal government as the United States Supreme Court has defined the term. See *United States* v. *Orleans, supra* at 815-819.

5. *HUD regulations.* The applicable procurement provision of 24 C.F.R. § 85.36 (b) (1993), provides: "Grantees and subgrantees will use their own procurement procedures which reflect applicable State and local laws and regulations, provided that the procurements conform to applicable Federal law and the standards identified in this section." The HUD handbook referenced in Myers's letter of July 1, 1993,

states, as to procurement: "[Housing authorities] are also required to follow applicable State or local laws on procurement . . . . If State or local law is stricter than Federal standards, then State or local law will apply." The parties agree that the provisions of G. L. c. 149, §§ 44A-44H, are more stringent than the otherwise applicable Federal standards.

Regulations properly promulgated by a Federal agency have the force of law. Their application may not be waived at will by an agency's personnel. See *United States ex rel. Accardi* v. *Shaughnessy*, 347 U.S. 260, 265 (1954); *Montilla* v. *INS*, 926 F.2d 162, 166-167 (2d Cir. 1991); *California Human Dev. Corp.* v. *Brock*, 762 F.2d 1044, 1049 (D.C. Cir. 1985); 3 J.A. Stein, G.A. Mitchell & B.J. Mezines, Administrative Law § 13.03 [1] (1977 & Supp. 1993). In this instance, 24 C.F.R. § 85.36 (b), referred to as the "common rule" for grantees, was promulgated by HUD in 1988, at the direction of the Federal Office of Management and Budget. 53 Fed. Reg. 8034, 8068 (Mar. 11, 1988). It is not contended that the regulation, which would seem to mandate compliance with the Commonwealth's competitive bidding laws, was promulgated improperly or was beyond the scope of HUD's authority. Federal law thus requires compliance with G. L. c. 149, §§ 44A-44H, unless State law provides to the contrary.[7] As a final point, we examine that issue and conclude that it does not.

6. *The effect of G. L. c. 121B, § 11.* The authority argues that it is an agent of the Federal government based on G. L. c. 121B, § 11 (*b*) (1992 ed.), which enumerates certain powers of housing authorities. That legislation provides, in pertinent part: "Each [housing authority] shall have . . . the

---

[7]It appears that Myers's two letters to the authority, admitted in evidence by the judge, relied on legal decisions of the department to the effect that the Commonwealth's competitive bidding laws did not apply to a renovation or construction project of a local housing authority, when the project was supported by Federal funds. At the time, it was reasonable for Myers to rely on the department's decisions as accurate statements of our law. We do not view these letters as an attempt to waive applicable Federal regulations.

following powers . . . (*b*) To act as agent of, or to cooperate with the federal government in any clearance, housing, relocation, urban renewal or other project which it is authorized to undertake . . . ."

In *Commissioner of Labor & Indus.* v. *Lawrence Hous. Auth.*, 358 Mass. 202 (1970), relying in part on G. L. c. 121B, § 11 (*b*), this court concluded that a local housing authority was permitted to act as a Federal agent for purposes of acquiring public housing developed by the "turnkey" method,[8] and that, when a housing authority did so, the department lacked the power to require the housing authority to comply with the Commonwealth's competitive bidding and minimum wage laws. *Id.* at 210. A housing authority desiring to acquire public housing through the turnkey program was obligated to comply with the Federal regulations governing the program. The regulations governing the program set the salaries and wages of those employed in the construction of a turnkey project. *Id.* at 208-209.

It was reasoned in the *Lawrence Hous. Auth.* opinion that, where Federal regulations defined a program, and where those regulations conflicted in certain respects with otherwise applicable State standards, "the Legislature intended that local housing authorities be able to take advantage of any available Federal assistance in developing low-rent projects." *Id.* at 209-210. The power conferred on a local housing authority to act as an agent of the Federal government, and to cooperate with the Federal government in any housing project, see G. L. c. 121B, § 11 (*b*), was considered sufficiently broad to excuse compliance with State standards, if insistence on those standards would preclude participation in a

[8]Under this program, a private developer acquired land and prepared plans for a public housing development. If the housing authority and HUD approved those plans, the developer proceeded with construction. The housing authority then purchased the property from the developer, with HUD funds, on the completion of construction. *Commissioner of Labor & Indus.* v. *Lawrence Hous. Auth.*, 358 Mass. 202, 204-205 (1970). The program was designed to reduce the cost of constructing public housing by freeing the builder from procedures imposed on a housing agency undertaking a comparable project. *Id.* at 207 n.6.

Federal program. *Id*. at 210 & n.11. In *Commissioner of Labor & Indus.* v. *Boston Hous. Auth.*, 345 Mass. 406 (1963), a similar conclusion was reached. Where compliance with the Commonwealth's minimum wage laws would have conflicted with budgetary requirements of the Federal Public Housing Administration (the predecessor of HUD), and led, perhaps, to a loss of Federal funding, it was decided that the Legislature, by permitting a local housing authority to cooperate with the Federal government, and to receive Federal funds and loans, intended to excuse the authority from compliance with otherwise applicable provisions of State law. *Id*. at 415.

In contrast to the situations described in the preceding cases, the Federal regulations for the Comprehensive Grant Program contemplate compliance with State procurement laws in the States which have standards as stringent as, or more stringent than, Federal standards. This court has observed frequently that the Commonwealth's competitive bidding laws serve important goals. They enable "the awarding authority [to] obtain the lowest price among responsible contractors, [and] to establish an open and honest procedure for competition for public contracts." *Modern Continental Constr. Co.* v. *Lowell*, 391 Mass. 829, 840 (1984). See *James J. Welch & Co.* v. *Deputy Comm'r of Capital Planning & Operations*, 387 Mass. 662, 666 (1982); *Interstate Eng'g Corp.* v. *Fitchburg*, 367 Mass. 751, 757-758 (1975).

The provisions of G. L. c. 149, § 44A, make clear that the Legislature did not intend to permit public instrumentalities to avoid compliance with competitive bidding laws solely on the basis of Federal involvement. Section 44A (2) states quite directly that *every* contract for construction of a building by a public agency shall be awarded in accordance with the procedures set out in §§ 44B-44H. Section 44A (3) adjusts certain deadlines to accommodate the need for Federal approval, when it is necessary to obtain such approval. Exceptions to the application of G. L. c. 149, §§ 44A-44H, are few, and those that exist are narrowly and carefully drawn. See G. L. c. 149, § 44A (4) and (5) (*a*). We do not think

that the Legislature intended to permit a local housing authority to rely on G. L. c. 121B, § 11 (*b*), to classify itself as a Federal agent based solely on the receipt of Federal funds, and so evade compliance with the competitive bidding laws when the relevant Federal regulations explicitly direct that State procurement laws should be followed.

7. *Relief.* The judgment is vacated. The case is remanded to the Superior Court for the entry of a new judgment pursuant to G. L. c. 231A, declaring that the authority must comply with the provisions of G. L. c. 149, §§ 44A-44H, in connection with the contract for Mass. Project 6-3, and for the grant of such other relief as may be determined to be appropriate.

*So ordered.*