Salinger, Kenneth W., J.
Plaintiffs oppose the plans by Boston Children’s Hospital to construct a new clinical building at its downtown Boston campus because the project as currently designed would destroy Prouly Garden. Plaintiffs have shown that the sixty-year-old, half-acre Prouty Garden is a quiet sanctuary for Hospital patients and their families and plays a valuable therapeutic role for many ailing children. Plaintiffs believe that the Hospital should be able to expand its clinical space without building on the site of Prouty Garden. That issue is not before the Court, which has no power to decide whether Prouiy Garden is too important to be replaced by a new clinical building.
In this lawsuit, Plaintiffs claim that the Hospital has illegally begun site preparation and other construction required for the proposed Boston Children’s Clinical Building (which both sides call the “BCCB”) without first obtaining approval from the Massachusetts Department of Health (“DPH”). They ask the Court to enter a preliminary injunction that would bar the Hospital and its construction contractors from continuing any construction related to the BCCB project or doing anything else that could damage or destroy Prouty Garden.
For the reasons discussed below, the Court concludes that it must DENY this request for a preliminary injunction because Plaintiffs have not met their burden of proving that they are likely to succeed on the merits of their legal claims. Plaintiffs are entitled to press their claims: they have standing to enforce the determination of need (“DoN”) statute, and this action is not barred on the grounds that Plaintiffs failed to exhaust their administrative remedies or that DPH has primary jurisdiction over this matter. On the merits, however, Plaintiffs have not shown that the Hospital is acting illegally by moving forward with its current construction work before receiving DoN approval for the BCCB project from DPH.[3]
1. Legal Standards
“A preliminary injunction is an extraordinary remedy never awarded as of right.” Winter v. Natural Res. Def. Council Inc., 555 U.S. 7, 24 (2008). To the contrary, “the significant remedy of a preliminary injunction should not be granted unless the plaintiffs had made a clear showing of entitlement thereto.” Student No. 9 v. Board of Educ., 440 Mass. 752, 762 (2004).
Plaintiffs are asking the Court to enforce the requirements of the determination of need law, which requires hospitals and other health care facilities to obtain approval from DPH before making substantial capital expenditures to construct or substantially change some facility. See G.L.c. Ill, §§25B-25G. As a result, to obtain preliminary injunctive relief Plain *336 tiffs must prove that (1) they are likely to succeed on the merits of their claims, and (2) the requested relief will promote or at least will not adversely affect the public interest. See LeClair v. Town of Norwell, 430 Mass. 328, 331-32 (1999). Unlike in lawsuits involving purely private interests, “a showing of irreparable harm is not required” because Plaintiffs are “acting as private attorneys general to enforce a statute or a declared policy of the Legislature.” Fordyce v. Town of Hanover, 457 Mass. 248, 255 n.10 (2010) (public bidding statutes); accord, LeClair, supra (designer selection statute); Edwards v. City of Boston, 408 Mass. 643, 646-47 (1990) (uniform procurement act).
Plaintiffs are not entitled to preliminary injunctive relief if they cannot prove that they are likely to succeed on the merits of their claims. See Fordyce, supra, at 265 (vacating preliminary injunction on this ground); Wilson v. Commissioner of Transitional Assistance, 441 Mass. 846, 858-59 (2004) (same). “The burden of showing a likelihood of success on the merits is on the party seeking the preliminary injunction.” Berrios v. Dept. of Pub. Welfare, 411 Mass. 587, 598 (1992), quoting Robinson v. Secretary of Admin., 12 Mass.App.Ct. 441, 451 (1981). The Hospital is not required to prove that the current construction activities challenged by Plaintiffs are lawful. Instead, to obtain a preliminary injunction the Plaintiffs must demonstrate they are likely to succeed in proving that those activities are unlawful.
2. Findings of Fact
The Court makes the following findings of fact based on the affidavits, verified complaint, and exhibits submitted by the parties, and on reasonable inferences drawn from that evidence.
The Hospital plans to build a new Boston Children’s Clinical Building on its existing properly in the Long-wood Medical Area of Boston, at the corner of Shattuck Street and Meadow Lane. If approved and built, the BCCB will be located in the area currently occupied by the Wolbach Building, the Prouiy Garden, the Library and the Ida C. Smith Building, and portions of the Bader East and Farley Buildings. Thus, construction of the BCCB will require demolition of the Wolbach Building and destruction of Prouty Garden.
The proposed new building will be twelve stories tall and contain approximately 445,000 square feet of floor space. The BCCB will expand and upgrade the Hospital’s inpatient units, provide additional surgical capacity and allow the Hospital to replace and relocate outdated operating rooms, and include a new neonatal intensive care unit and an interdisciplinary cardiac care unit, among other new facilities. As for green spaces, the BCCB will have an outdoor rooftop garden, terrace gardens on inpatient floors, internal winter gardens, and an outdoor garden at ground level. The Hospital’s plans for this new building have been approved by the Boston Redevelopment Authority, the Boston Zoning Commission, and the Secretary of the Executive Office of Energy and Environmental Affairs.
In December 2015, the Hospital filed an Application for a Determination of Need with DPH concerning its proposal to build the BCCB. The Hospital has informed DPH that it plans to spend more than $ 1 billion on the BCCB project, including roughly $850 million in new construction and $220 million in renovations to existing buildings. The Hospital spent roughly $8 million of this amount before making its DoN filing to pay for planning work by its architects, engineers, and construction contractors. This DoN application is still pending. In February 2016 DPH directed the Hospital to provide an independent cost analysis of the Application in accord with G.L.c. Ill, §25C(h). The four-month period for review of the Application is stayed until that analysis is completed and submitted to DPH.
The DoN statute requires DPH review and approval for any “substantial capital expenditure” to construct any health care facility. See G.L.c. Ill, §25C. At present, any non-exempt capital expenditure by an acute care hospital like Boston Children’s Hospital that exceeds $17,826,988 will constitute a “substantial capital expenditure” and thus be subject to DoN review.
Before filing its DoN application, the Hospital requested an advisory opinion from DPH as to whether the Hospital may demolish the Wolbach Building and clear that site without first obtaining a DoN. The Hospital explained that demolition of Wolbach will be unusually time consuming because the Boston Landmarks Commission and the Massachusetts Historical Commission are requiring the Hospital to preserve and reuse the entrance facade, stairs, and several other building elements. The Hospital acknowledged that all expenditures associated with preserving parts of the Wolbach building and demolishing the rest will have to be included in the costs subject to DoN review for the proposed BCCB. But the Hospital represented that it planned to demolish the Wolbach Building whether or not the BCCB is approved because Wolbach is outdated, deteriorating, and no longer suitable for continued administrative use of the Hospital.
In November 2015, DPH issued a formal advisory ruling stating that “the proposed demolition of the Wolbach Building may go forward without DoN review,” because that work will be required even if the Wolbach site is never used for a project that is subject to the DoN statute. DPH ordered that “(i]f the Hospital does include the Wolbach Building site in its DoN project” to construct the planned new clinical building, then “the Hospital must include the cost of the site preparation and demolition” in the “Maximum Capital Expenditure” for that project.
Consistent with that advisory ruling, the Hospital has begun making preparations to demolish the Wolbach Building. The current work on this demolition project includes drilling and taking boring sam- *337 pies as part of a geotechnical site investigation of the properties of soil and rock around Wolbach. Some of those drilling sites are on the south side of Wolbach inside Prouty Garden, and others are on the north or Shattuck Street side of the building. After each boring is completed within Prouty Garden, the grass will be repaired and the boring site will be restored to its previous condition. The Court finds that these boring samples will provide information that the Hospital plans to use in engineering its planned new clinical building. But it also credits the Hospital’s evidence that the same geotechnical information of the areas adjacent to the Wolbach Building is needed to make plans for demolishing that building.
Separate and apart from the Wolbach demolition project, the Hospital has also obtained three alteration permits from the City of Boston’s Inspectional Services Department authorizing the renovation of discrete parts of the Hospital’s existing facilities. The Hospital’s contractors have begun work on all three of these renovation projects. First, a permit dated October 2, 2015, authorizes interior renovations to office space used by the pathology department in the Bader and Farley buildings at a total cost of close to $885,000. The Court finds that these renovations are separate and distinct from the planned relocation of much of the pathology department from the Bader Building to the planned new BCCB. Second, a permit dated November 20, 2015, authorizes the construction of a new cooling tower connected to new kitchen refrigeration units at a total cost of roughly $2.0 million. BCH will have to do this work whether or not it ever builds the proposed BCCB. Third, a permit dated December 15, 2015, authorizes the relocation of equipment used by the Hospital’s Operations Center, at a total cost of roughly $2.4 million. This work is also not related to the BCCB. The Court credits the Hospital’s evidence that its Operations Center has nothing to do with the new central processing department proposed as part of the planned BCCB. The Operations Center houses, monitors, and operates the Hospital’s security and fire protection systems. In contrast, the central processing department handles work such as the sterilization of surgical tools.
3. Plaintiffs’ Right to Seek Relief
The Hospital argues that the Court should not consider the merits of the pending request for a preliminary injunction because Plaintiffs purportedly lack standing to challenge the current construction activities, Plaintiffs have failed to exhaust their administrative remedies before DPH, and DPH has primary jurisdiction over the issues raised by Plaintiffs’ claims. The Court is not convinced that any of these arguments has merit.
3.1. Standing
A court lacks subject matter jurisdiction over a civil lawsuit, and thus has no power “to decide the merits of a dispute or claim,” if none of the plaintiffs has standing to file suit. HSBC Bank USA, N.A. v. Matt, 464 Mass. 193, 199 (2013). “[Standing is not measured by the intensity of the litigant’s interest or the fervor of his advocacy.” Enos v. Secretary of Envtl. Affairs, 432 Mass. 132, 135 (2000), quoting Valley Forge College v. Americans United for Separation of Church & State, 454 U.S. 464, 486 (1982). Normally parties may only bring suit to enforce a statutory requirement where the defendant owes them some legal duly under the statute and the plaintiffs can show that they were injured as a result and that their injury falls “within the area of concern of the statute or regulatory scheme” that the plaintiffs seek to enforce. Sullivan v. Chief Justice for Admin. & Mgmt. of Trial Court, 448 Mass. 15, 21-22 (2006), quoting Penal Insts. Commissioner for Suffolk County v. Commissioner of Correction, 382 Mass. 527, 532 (1981).
“(T]he Legislature has power to confer standing” upon individuals or groups of persons to enforce purely public interests. Shoolman v. Health Facilities Appeals Bd., 10 Mass.App.Ct. 799, 804 (1980). “When a statute confers standing in relation to particular subject matter, that statute, rather than more general ideas about standing, governs who may initiate legal action in relation to the subject matter.” Centennial Healthcare Inv. Corp. v. Commissioner of Div. of Med. Assistance, 61 Mass.App.Ct. 320, 326, rev. denied, 442 Mass. 1107 (2004), quoting Local 1445, United Food & Commercial Workers Union v. Police Chief of Natick, 29 Mass.App.Ct. 554, 558 (1991).
Plaintiffs have standing to bring this lawsuit because they are a group of twelve taxpayers who reside in Massachusetts and they allege that the Hospital is violating the determination of need statute. The Legislature has conferred standing on groups of ten or more “taxpayers in the commonwealth to enforce” the DoN statute. See G.L.c. Ill, §25G. Plaintiffs therefore have standing to press their claims that the Hospital has unlawfully begun construction of the BCCB project without receiving DoN approval, and is thereby undermining the important public interest in health care cost containment that underlies that statute. Because of §25G, Plaintiffs are not required to show that the BCCB project and the Hospital’s current construction activities would infringe their private legal rights and thereby cause them any personal injury. See Shoolman, 10 Mass.App.Ct. at 803-05.
The Hospital’s argument that Plaintiffs lack standing because the current construction projects are not subject to the DoN statute, and thus Plaintiffs cannot prevail on the merits, wrongly conflates separate and distinct issues. “The threshold question whether [a plaintiff] has standing is different than the ultimate merit of [its] allegations.” Hoffman v. Bd. of Zoning Appeal of Cambridge, 74 Mass.App.Ct. 804, 809, rev. denied, 455 Mass. 1104 (2009). “A review of standing . . . does not require that the factfinder ultimately find a plaintiffs allegations meritorious. To do so would be *338 to deny standing, after the fact, to any unsuccessful plaintiff,” which would be incorrect. Jepson v. Zoning Bd. of Appeals of Ipswich, 450 Mass. 81, 91 (2007), quoting Marashlian v. Zoning Bd. of Appeals of Newburyport, 421 Mass. 719, 721 (1996). Plaintiffs need not “prevail on the merits to secure standing.” Marhefka v. Zoning Bd. of Appeals of Sutton, 79 Mass.App.Ct. 515, 518, rev. denied, 460 Mass. 1108 (2011).[4]
3.2. Exhaustion of Remedies
The Hospital also argues that Plaintiffs should not be allowed to press their claims because they have not exhausted their administrative remedies before DPH. It correctly notes that Plaintiffs could have asked the Public Health Council within DPH to review the advisory ruling that the demolition of the Wolbach building may proceed without a DoN, but failed to do so. See 105 C.M.R. §100.120(C). It also correctly notes that in late March 2016 Plaintiffs asked DPH to order the Hospital to stop its current construction activities, based on the same legal arguments that Plaintiffs now seek to press in this civil action, and that DPH has not yet taken any formal action on that request.
The Court concludes that Plaintiffs should nonetheless be allowed to press their claims and seek enforcement of the DoN statute, even though they have arguably failed to exhaust every possible opportunity for obtaining relief from DPH.
“As a general rule, where an administrative procedure is available” from a state agency, a party must “exhaust the opportunities for an administrative remedy” before seeking injunctive or declaratory relief in court. Space Bldg. Corp. v. Commissioner of Revenue, 413 Mass. 445, 448 (1992).
However, a judge has the discretion to allow a civil action to go forward in court even where the plaintiff has not exhausted its administrative remedies where the possible “administrative remedy is ‘seriously inadequate,’ and exceptions to the rule occur most often when important, novel, or recurrent issues are at stake, when the decision has public significance, or when the case reduces to a question of law.” Id. (holding that judge erred in dismissing claim on the ground of failure to exhaust administrative remedies), quoting Sydney v. Commissioner of Corps. & Taxation, 371 Mass. 289, 294 (1976). Similarly, “(i]n cases where resort to an administrative agency obviously would be futile, and there is no fact-finding function for the agency to perform, a court may exercise jurisdiction despite a plaintiffs failure to exhaust administrative remedies.” Norfolk Elec., Inc. v. Fall River Housing Auth. 417 Mass. 207, 210 (1994).
In the exercise of its discretion, the Court concludes that Plaintiffs should not be required to exhaust any further administrative remedies before seeking to challenge the Hospital’s ongoing construction work because “the case presents a purely legal question of wide public significance.” Kelleher v. Personnel Adm’r of Dep’t of Pers. Admin., 421 Mass. 382, 385 (1995). The case reduces to a question of law because the underlying facts themselves are not seriously in dispute, even though the parties disagree as to the legal significance of those facts. Cf. Campbell v. Schwartz, 47 Mass.App.Ct. 360, 363 (1999) (dispute as to legal significance of undisputed facts is a question of law, not a question requiring fact finding). The Legislature has made the policy judgment that compliance with the determination of need statute is of such public importance that ten or more taxpayers may go to court to enforce compliance by a hospital or other health care facility. See G.L.c. Ill, §25G. And it would be futile for Plaintiffs to wait any longer for DPH to act on their request for an order to stop all construction since time is of the essence given the Hospital’s ongoing construction activities, DPH made clear in its advisory opinion regarding the Wolbach Building that it disagrees with Plaintiffs’ legal position, the failure by DPH to take any action on Plaintiffs’ pending request for a stop order seems to indicate (as the Hospital itself has argued) that DPH believes that Plaintiffs claims are groundless, and DPH is a party to the case but makes no representation that it intends to consider or act upon Plaintiffs’ recent letter.
Under these circumstances, Plaintiffs should be allowed to press their claims before the Superior Court without waiting any longer for DPH to act. It would not be appropriate to allow the Hospital to continue spending money on construction allegedly in violation of the DoN statute on the ground that Plaintiffs failed to exhaust their administrative remedies before DPH. See Norfolk Elec., 417 Mass. at 210-11 (trial judge appropriately exercised challenge over claim that construction project by housing authority violated competitive bidding laws, even though plaintiff had not exhausted administrative remedies, since case turned on a question of law that raised a matter of public interest, and it would be futile to press claim before agency that had already decided legal issue in a manner adverse to plaintiff). Given “the public interest in a speedy resolution of the controversy,” it is appropriate for the Court to address the merits of Plaintiffs’ request for a preliminary injunction. Lahey Clinic Found., Inc. v. Health Facilities Appeals Bd., 376 Mass. 359, 359 (1978) (reviewing merits of claim that extension of prior DoN constituted grant of a new and thus appealable DoN, even though the issue should have been reviewed by the Health Facilities Appeals Board before plaintiff brought civil action in Superior Court).
3.3. Primary Jurisdiction
The Hospital’s related assertion that the DPH has primary jurisdiction over Plaintiffs’ claims, and that the Court should therefore not reach the merits, is also unavailing. “The doctrine of primary jurisdiction arises in cases where a plaintiff, ‘in the absence of *339 pending administrative proceedings, invokes the original jurisdiction of a court to decide the merits of a controversy’ that includes an issue within the special competence of an agency.” Fernandes v. Attleboro Hous. Auth., 470 Mass. 117, 121 (2014), quoting Murphy v. Administrator of the Div. of Personnel Admin., 377 Mass. 217, 220 (1979). This doctrine “has particular applicability when ‘an action raises a question of the validity of an agency practice ... or when the issue in litigation involves ’’technical questions of fact uniquely within the expertise and experience of an agency." ’ “ Id. (ellipsis in original), quoting Murphy, supra, at 221, quoting in turn Nader v. Allegheny Airlines, Inc., 426 U.S. 290, 304 (1976).
“The doctrine of primary jurisdiction does not apply here because the claims in question [have already] been the subject of administrative review. The doctrine of primary jurisdiction precludes judicial consideration of a matter [only] where administrative proceedings have not yet begun.” Athol Mem’l Hosp. v. Commissioner of Div. of Med. Assistance, 437 Mass. 417, 424 n.9 (2002). The doctrines of exhaustion of administrative remedies and primary jurisdiction serve similar purposes but apply in different circumstances. See Liability Investigative Effort, Inc. v. Medical Malpractice Joint Underwriting Ass’n of Massachusetts, 409 Mass. 734, 750-51 (1991). “The doctrine of exhaustion of administrative remedies contemplates a situation where some administrative action has begun, but has not yet been completed; where there is no administrative proceeding under way, the exhaustion doctrine has no application. In contrast, primary jurisdiction situations arise in cases where a plaintiff, in the absence of pending administrative proceedings, invokes the original jurisdiction of a court to decide the merits of a controversy.” Id., quoting Murphy, 377 Mass. at 220.
In any case, since nothing in the DoN statute gives DPH exclusive jurisdiction to resolve the issues raised in Plaintiffs’ complaint, the Court has broad discretion whether to refer the issues raised in this action to DPH or not. See Blauvelt v. AFSCME Council 98, Local 1703, 74 Mass.App.Ct. 794, 801-02 (2009). For the reasons discussed above in connection with exhaustion of remedies, including the absence of any material dispute of fact that must be resolved by DPH, the Court would exercise its discretion to retain jurisdiction even if the doctrine of administrative primary jurisdiction applied here. See Leahy v. Local 1526, American Federation of State, County and Municipal Employees, 399 Mass. 341, 349-50 (1987) (where there were “no genuine issues as to any material fact,” and thus no need for fact finding by agency, Superior Court judge did not abuse his discretion in deciding merits rather than deferring to agency’s primary jurisdiction); Kartell v. Blue Shield of Massachusetts, Inc., 384 Mass. 409, 412-13 (1981) (same).
4. Likelihood of Success
Turning to the merits, the Court concludes that it must deny the request for a preliminary injunction because Plaintiffs have not met their burden of proving they are likely to succeed on their claims that the Hospital has violated the DoN statute by beginning construction activities that require DoN approval by the Department of Public Health.
4.1. Wolbach Building
The Court credits the Hospital’s evidence that it intends to take down the Wolbach Building whether or not DPH issues a favorable DoN with respect to the proposed BCCB project. The Hospital correctly notes that if DPH does not approve the BCCB, the Hospital could seek DoN approval for a smaller project in its stead or even redevelop the Wolbach site by constructing a facility not subject to DoN review. Furthermore, it appears to be undisputed that the total cost to demolish Wolbach while preserving certain of its architectural elements for reuse in any future building constructed on the site will be less than the dollar threshold that currently makes hospital capital projects subject to DoN review. Plaintiffs note that the memorandum of agreement that the Hospital entered into with the Boston Licensing Commission in November 2013 states that the Hospital intends to demolish Wolbach in order to clear the site for the BCCB. But nothing in that memorandum barred the Hospital from later deciding that it was in the Hospital’s best interest to proceed with the Wolbach demolition in any case, taking the risk that it may not receive a DoN for the BCCB project and that the Hospital would therefore have to find a different use for the Wolbach site.
Under these circumstances, the advisory ruling by DPH that the Hospital may proceed to demolish Wolbach without a DoN, but that the cost of doing so must be considered as part of the total capital expenditures for the BCCB project for purposes of that DoN review, was a plausible interpretation and application of the DoN statute. The DoN statute does not expressly address situations like this. As a result, the Court must defer to any reasonable interpretation of the statute by the administrative agency responsible for implementing it. See generally, e.g., Goldberg v. Board of Health of Granby, 444 Mass. 627, 632-34 (2005). DPH is authorized to issue advisoiy rulings regarding whether the DoN statute applies to a particular project, without undertaking a formal rulemaking proceeding to adopt a regulation addressing the issue. See G.L.c. 30A, §8; 105 C.M.R. §100.120. It is therefore empowered to construe its statutory mandate in the process of making such an advisoiy ruling, even if it has not addressed the same issue in a formal regulation. See Given v. Commerce Ins. Co., 440 Mass. 207, 214 n.8 (2003).
An advisory ruling by DPH that a particular facility or construction project is “not subject to a determina *340 tion of need is entitled to particular deference by the courts.” Brookline v. Medical Area Serv. Corp., 8 Mass.App.Ct. 243, 247-48 (1979). Such deference is appropriate because the Legislature, “(i]n enacting the determination of need statute, . . . intended the department to have a major role in ‘defining the contours of the statute, and in considering its applicability on an ad hoc basis to projects that did not fit traditional norms.’ ” Shoolman v. Health Facilities Appeals Bd., 404 Mass. 33, 37 (1989), quoting Brookline, supra, at 254.
On the current record, therefore, it appears that Plaintiffs are unlikely to succeed in proving that demolition of the Wolbach Building without any DoN for the larger BCCB project is illegal. The fact that the DPH advisory ruling does not define the scope of the Wolbach demolition project, and in particular does not reference any drilling in Prouty Garden for the purposes of geotechnical testing, is beside the point. Plaintiffs have not met their burden of proving that the current drilling near the exterior of Wolbach is unrelated to the demolition project but instead is needed only to plan for engineering the proposed new clinical building.
Proceeding with the Wolbach demolition before DPH has ruled on the DoN application for the proposed new clinical building does not violate any policy or rule against disaggregating or segmenting a construction project in order to avoid or limit DoN review. In its advisory ruling, DPH correctly ruled that if the Wolbach site is to be used for the proposed BCCB, which it is, then all costs of the Wolbach demolition must be included in the “Maximum Capital Expenditure” for purposes of DoN review of that project. See 100 C.M.R. §100.326 (capital expenditure for project subject to DoN review includes all past, present, and future expenditures necessary for construction of project). It appears to be undisputed that the Hospital has included all Wolbach-related costs in its DoN submission for the BCCB project, as required.
4.2. Renovation Projects
Plaintiffs have made no showing that the other three renovation projects challenged by the Plaintiffs—i.e., the renovations to office space currently used by the pathology department, the installation of new refrigeration units to serve the kitchen, and the relocation of equipment used by the operations center—are subject to the DoN statute. As discussed above, all three of these projects fall well below the dollar threshold that makes construction projects subject to DoN review, and none of them is part of the larger BCCB project.
The mere fact that some of the paperwork submitted to the City of Boston’s Inspectional Services Department with respect to the refrigeration units and operations center equipment bear labels saying that this work is “BCCB Enabling” is not dispositive. The manner in which a hospital classifies or describes a capital project for the purposes of obtaining zoning approval or building permits has no bearing on whether the project is subject to the DoN statute, because the purposes and objectives of zoning and building codes are materially different from the purposes and objectives of the DoN process. See Shoolman v. Health Facilities Appeals Bd., 404 Mass. 33, 39 (1989). Plaintiffs have not submitted any other evidence that these three renovation projects are necessary parts of the BCCB project, as opposed to wholly independent improvements that the Hospital would undertake whether or not its DoN application for the new clinical building is ever approved.
4.3. Initial Spending on BCCB Project
Finally, the undisputed fact that the Hospital spent several million dollars on the BCCB project before it ever applied for DPH approval does not demonstrate that it violated the DoN statute. The Hospital was required to seek and obtain local zoning approval for the project before making its DoN filing. See 105 C.M.R. §100.306(B). It could not seek or obtain approval from the Boston Redevelopment Authority and the Boston Zoning Commission without retaining architects and other consultants to do substantial planning and document preparation. Such expenses must be included in the total amount for which DoN approval is sought, in accord with 100 C.M.R. §100.326, but by their nature must be incurred before the DoN application is submitted.
ORDER
Plaintiffs’ request for a preliminary injunction is DENIED. A scheduling conference will be held pursuant to Mass.R.Civ.P. 16 on June 7, 2016, at 2:00 p.m.

 In their complaint, Plaintiffs also claim that the Hospital is violating the determination of need statute by engaging in fundraising for the BCCB project before obtaining DPH approval. However, Plaintiffs do not seek any preliminary injunction to bar continued fundraising for the project. As a result, the fundraising claim is not relevant to Plaintiffs’ pending request for preliminary injunctive relief.

 The contrary ruling in Adam v. Department of Public Health, 15 Mass.App.Ct. 906, 907 (1982) (rescript)—which held that a group of ten taxpayers lacked standing to challenge construction of a health care facility under the DoN statute, because the total capital cost was less than the dollar threshold that would make the project subject to DoN review—is no longer good law because it has been superseded by the Supreme Judicial Court’s decisions in Jepson and Marashlian.